**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 10-10150 WGY**

| |
|---|
| **SIMON GLIK,**<br>         **Plaintiff**<br><br>**v.**<br><br>**JOHN CUNNIFFE, PETER J. SAVALIS and JEROME HALL-BREWSTER, in their individual capacities, and the CITY OF BOSTON,**<br>         **Defendants.** |

**DEFENDANTS, CITY OF BOSTON, JOHN CUNNIFFE, PETER J. SAVALIS AND JEROME HALL-BREWSTER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**

**I.   INTRODUCTION**

The Defendants, City of Boston (the "City"), John Cunniffe, Peter Savalis, and Jerome Hall-Brewster (collectively referred to as the "Defendants" or "officers") hereby move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiff's complaint. As grounds therefore, the City and the Defendants state that the Plaintiff, Simon Glik (the "Plaintiff" or "Glik") has not asserted a plausible § 1983 or Massachusetts Civil Rights claim against the City or the officers because:

1. The facts alleged in Plaintiff's Complaint clearly indicate that the officers did not violate his First or Fourth Amendment rights;

2. Plaintiff's Complaint demonstrates that the officers are entitled to qualified immunity because it is not well-settled that he had a constitutional right to record the officers;

3. Plaintiff has not pled any facts that would support a claim under the Massachusetts Civil Rights Act;

1

    4.    Plaintiff has not pled any facts that would support a claim of malicious prosecution; and

    5.    Plaintiff has failed to plead facts that would support his 42 U.S.C. § 1983 claim against the City.

## II.  FACTUAL BACKGROUND[1]

The Plaintiff states that on October 1, 2007, he was walking on the Tremont Street sidewalk, heading from Park Street to Boylston Street, when he saw the officers arresting a suspect near a park bench. See Complaint at ¶¶ 9-10 attached hereto as Exhibit A (hereinafter, "Complaint at ¶__"). The Plaintiff then took out his cell phone and, standing ten feet away, recorded the officers arresting the suspect. See id. at ¶¶ 13-14. Using his cell phone, the Plaintiff recorded three separate segments of the ongoing arrest. See id. at ¶¶ 14-15. At no time did the Plaintiff speak to the officers before the suspect they had apprehended was handcuffed. See id. at ¶ 15.

After the suspect was placed in handcuffs, one of the officers approached the Plaintiff and stated, "I think you have taken enough pictures," to which the Plaintiff responded, "I am recording this. I saw you punch him." See id. at ¶ 17. One of the other officers then asked if the Plaintiff's phone was recording audio. See id. at ¶ 18. The Plaintiff confirmed that his phone had been recording audio, and as a result, the officers placed the Plaintiff under arrest for: (1) unlawfully intercepting their oral communications in violation of M.G.L. c. 272, § 99; (2) aiding in the escape of a prisoner in violation of M.G.L. c. 268, § 17; and (3) disturbing the peace in violation of M.G.L. c. 272, § 53. See id. at ¶ 25.

---

[1]     Although the Defendants dispute the following facts, for the limited purposes of this motion, the Defendants assume these facts as true.

The prosecution for the Commonwealth of Massachusetts voluntarily dismissed the charge of aiding in the escape of a prisoner, but did go forward on the other two charges. See id. at ¶ 29-30. On February 1, 2008, Judge Summerville of the Boston Municipal Court dismissed the remaining two charges for lack of probable cause. See id. at ¶ 29. The Court reasoned that the Plaintiff's recording of the arrest was not secret and that the officers had impliedly consented to the recording because the Plaintiff had openly displayed his cell phone while the officers were effecting an arrest of a suspect. See id. The Plaintiff then filed this lawsuit on February 1, 2010.

## III.   MOTION TO DISMISS STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule 8 pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (U.S. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. If the well-pleaded facts "do not permit the court to infer more than the mere possibility" of the wrong alleged by Plaintiff, the complaint has alleged, but has not shown, that the pleader is entitled to relief. Id. at 1950.

Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 1949. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility

that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

Within this analytical framework, the Plaintiff has failed to plead facts sufficient to state a plausible § 1983 claim against the City.

## IV. ARGUMENT

### A. PLAINTIFF FAILS TO STATE ACTIONABLE CLAIMS AGAINST THE OFFICERS IN COUNT 1 BECAUSE PLAINTIFF HAS FAILED TO ALLEGE THE REQUISITE CONSTITUTIONAL VIOLATION TO SUSTAIN CLAIMS UNDER 42 U.S.C. § 1983.

The Plaintiff's 42 U.S.C. § 1983 claim fails because the officers did not violate his Constitutional rights. To establish liability under 42 U.S.C. § 1983, "plaintiffs must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). In his Complaint, Plaintiff claims that the officers deprived him of his First Amendment right to "document[ ] police conduct" and his Fourth Amendment right to be free from arrest without probable cause. Complaint at ¶¶ 1, 44. The facts as alleged in Plaintiff's Complaint, however, demonstrate that the Plaintiff was not deprived of his First or Fourth Amendment rights because (1) there is no unfettered First Amendment right to document police conduct; and (2) probable cause existed to arrest the Plaintiff for secretly recording the Defendants' oral communications.

## 1. THE OFFICERS DID NOT VIOLATE THE PLAINTIFF'S FIRST AMENDMENT RIGHTS.

With respect to Plaintiff's claim that his First Amendment right to document police conduct was violated, no such constitutional right exists.  As an initial matter, Massachusetts General Laws, Ch. 272, § 99 specifically prohibits individuals from secretly recording the oral communications of another.[2]  Moreover, the Massachusetts Supreme Judicial Court, in Commonwealth v. Hyde, 434 Mass. 593, 605 (2001) upheld the conviction of the defendant, Michael Hyde, for violating the Massachusetts Anti-Wiretapping statute when he secretly recorded the oral communications of police officers during a traffic stop.  Thus, it is clear that in the Commonwealth of Massachusetts, there is no unfettered First Amendment right to document police conduct.

While other jurisdictions have recognized that there may be a First Amendment right to *videotape* or *photograph* police conduct, no such right has been declared by Massachusetts, the First Circuit, or the U.S. Supreme Court.  Compare, Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) (First Amendment right to photograph and/or videotape police officers is *subject to time, place, and manner restrictions*); Gilles v. Davis, 427 F.3d 197, 212 n. 14 (3rd Cir. 2005) ("[*V*]*ideotaping or photographing* police in the performance of their duties on public property *may* be a protected activity. . ..") (emphasis added); with Jean v. Massachusetts State Police, 492 F.3d 24, 33 (1st Cir. 2007) (holding First Amendment only protected individual's right to *disseminate* recording of police officers made in violation of Mass. Gen. Laws, Ch. 272 § 99); Gouin v. Gouin, 249 F.Supp.2d 62, 79 (D.Mass. 2003) (allowing defendant police officers in § 1983 case to proceed with counterclaim against arrestee/plaintiff for violating Massachusetts

---

[2]  Plaintiff does not challenge the constitutionality of Mass. Gen. Laws, Ch. 272, § 99, nor would this lawsuit be the proper vehicle for doing so.

Anti-Wiretapping statute despite plaintiff's argument that defendants should have noticed he was recording them); Hyde, 434 Mass. at 595 ("We conclude that the Legislature intended G.L. c. 272, § 99, strictly to prohibit all secret recordings by members of the public, including recordings of police officers or other public officials interacting with members of the public, *when made without their permission or knowledge*.") (emphasis added).

At most, the First Circuit, in Jean, 492 F.3d at 33, has held that there is a First Amendment right for an individual to *disseminate* a recording obtained in violation of Mass. Gen. Laws, Ch. 272 § 99 if that individual did not take part in the illegal recording. Given that there is no unfettered First Amendment right to document police conduct, Plaintiff's 42 U.S.C. § 1983 claims against the officers must be dismissed.

**2. THE OFFICERS DID NOT VIOLATE THE PLAINTIFF'S FOURTH AMENDMENT RIGHTS.**

While Plaintiff does indeed enjoy a Fourth Amendment right to be free from arrest without probable cause, Plaintiff's right was not violated when he was arrested for violating the Massachusetts Anti-Wiretapping statute because the officers had probable cause to arrest him. Probable cause exists when the "facts and circumstances within the officer's knowledge" at the time of arrest "are sufficient to warrant a prudent person, or one of reasonable caution, in believing ... that the suspect has committed, is committing, or is about to commit an offense." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir.2009) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). In other words, "[p]robable cause to arrest exists where the facts and circumstances within the police officer's knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense." Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir.1999).

"The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." Id. (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir.2004)). When an arrest is challenged on the basis that probable cause was lacking, the arrest is "deemed objectively reasonable unless there *clearly* was no probable cause at the time the arrest was made." Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999) (quoting Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993) (emphasis added).

As discussed infra, in Section B of this Memorandum, the Massachusetts Anti-Wiretapping statute prohibits the secret interception of oral communications. See Mass. Gen. Laws, Ch. 272 § 99. The Massachusetts Anti-Wiretapping statute, as applied to the facts alleged in Plaintiff's Complaint, clearly demonstrates that probable cause existed to arrest Plaintiff. The officers had probable cause because Plaintiff recorded their oral communications without their knowledge or consent, while they were effecting the arrest of a suspect. Plaintiff's Complaint is devoid of any facts that would suggest that the officers were aware that Plaintiff's cell phone had audio recording capabilities or that the Plaintiff had informed them of his intent to record their oral communications while they were arresting the suspect. In fact, Plaintiff admits in his Complaint that he did not tell the officers he was recording their oral communications until after the suspect had been arrested and one of the officers approached him and asked if his cell phone was recording audio. Complaint at ¶¶ 17, 18.

Under these circumstances, it was reasonable for the officers to believe that the Plaintiff had violated the Massachusetts Anti-Wiretapping statute. Because probable cause existed to arrest Plaintiff, his claim that he was deprived of his Fourth Amendment right to be free from arrest without probable cause fails.

**B.    THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S CLAIM THAT THEY VIOLATED HIS FIRST AND FOURTH AMENDMENT RIGHTS.**

Even if the Plaintiff had a First Amendment right to record the arrest and a Fourth Amendment right to be free from search and seizures as a result of that recording, the officers are entitled to qualified immunity because there is no clearly established constitutional right to record police officers.  Qualified immunity is not merely a defense, it is immunity from suit, therefore, qualified immunity must be resolved at the earliest state of litigation.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1986).  Qualified immunity shields government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.s. 800 (1992).  Qualified immunity, therefore, applies "unless the official's conduct violated a clearly established constitutional right."  Pearson v. Callahan, 129 S.Ct. 808, 816 (2009).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  Pearson, 129 S.Ct. 808 at 815 (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).

The doctrine of qualified immunity under Saucier v. Katz, 533 U.S. 194, 201 (2001), and as modified by Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009), requires a two-part test.  The court must decide (1) "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.  Maldonado v. Fontanes, 568 F.3d  263, 268-69 (2009) (citing

Pearson, 129 S.Ct. at 815-16).  With respect to the second element, a right is "clearly established" when:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 639-40 (1987) (internal citations omitted).

"While Pearson rendered the sequential nature of the Saucier analysis permissive rather than mandatory, it left intact the substantive content of the two-part test." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 526 (1st Cir.2009) (citing Pearson, 129 S.Ct. at 818; Maldonado, 568 F.3d at 268-29).  Thus, a Court may begin its analysis with determining whether a clearly established constitutional right exists if consideration of the underlying constitutional question would result "in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Pearson, 129 S. Ct. at 818.

Within this analytical framework, the Defendants state that it would not have been clear to a reasonable officer in Defendants' position that arresting Plaintiff for violating the Massachusetts Anti-Wiretapping statute would have impinged upon his First and Fourth Amendment Rights.

**1. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS THERE IS NO CLEARLY ESTABLISHED FIRST AMENDMENT RIGHT TO RECORD POLICE CONDUCT.**

In several recent decisions outside the First Circuit, United States district courts have found that there is no "clearly established" First Amendment right to videotape or record police officers in the course of their official duties.  See, e.g., Matheny v. County of Allegheny, 2010 WL 1007859 (W.D.Pa.) ("[A]s of April 29, 2009, the Court concludes that the purported First

Amendment right to record the police was not clearly established."); Gravolet v. Tassin, 2009 WL 1565864, at *3-4 (E.D.La.) ("Given the uncertainty in the case law and the lack of guidance from the Fifth Circuit, this Court is unable to find as a matter of law that there was a clearly established right to videotape police officers at the time of the arrest.") (internal quotations omitted); Kelly v. Borough of Carlisle, 2009 WL 1230309 at * 8-9 (First Amendment right to record police not clearly established at time of plaintiff's arrest in May, 2007).

Assuming *arguendo* that a First Amendment right to "document[ ] police conduct" existed, a reasonable officer in the Defendants' position would still have believed that arresting Plaintiff for recording his oral communications without his knowledge or consent was constitutional. The Massachusetts Anti-Wiretapping Statute, Mass. Gen. Laws, Ch. 272 § 99 provides in relevant part:[3]

> Except as otherwise specifically provided in this section any person who willfully commits an interception, attempts to commit an interception, or procures any other person to commit an interception or to attempt to commit an interception of any wire or oral communication shall be fined not more than ten thousand dollars, or imprisoned in the state prison for not more than five years, or imprisoned in a jail or house of correction for not more than two and one half years, or both so fined and given one such imprisonment.
>
> The term "interception" means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person *given prior authority by all parties to such communication*; provided that it shall not constitute an interception for an investigative or law enforcement officer, as defined in this section, to record or transmit a wire or oral communication if the officer is a party to such communication or has been given prior authorization to record or transmit the communication by such a party and if recorded or transmitted in

---

[3] Again, Plaintiff does not challenge the constitutionality of Mass. Gen. Laws, Ch. 272 § 99.

10

the course of an investigation of a designated offense as defined herein. (emphasis added).

Plaintiff concedes in his Complaint that he was not arrested for *videotaping* the officers while they were in the process of effecting an arrest, but rather, he was arrested only after he confirmed to the officers that he was using his cell phone to record audio. Complaint at ¶¶ 18, 19. Pursuant to Mass. Gen. Laws, Ch. 272 § 99 and as interpreted by the Massachusetts Supreme Judicial Court in Commonwealth v. Hyde, it is unlawful to secretly intercept the oral communications of another. In Hyde, the Supreme Judicial Court upheld the defendant's conviction for secretly recording his exchange with two police officers after a routine traffic stop. Id. at 595. In upholding the defendant's conviction, the SJC declared that it was the intent of the Legislature to "strictly" prohibit all secret audio recordings when made without the knowledge or permission by all parties. Id.

The crux of Plaintiff's Complaint is that he was "openly" recording the officers, and as such, the officers should have known that his actions were not in violation of the Massachusetts Anti-Wiretapping statute. In support of this argument, Plaintiff relies on the language of the SJC decision in Hyde, that states "[defendant's prosecution] could have been avoided if, at the outset of the traffic stop, the defendant had simply informed the police of his intention to tape record the encounter, *or even held the tape recorder in plain sight*." Hyde, 434 Mass. at 605 (emphasis added).

Plaintiff's argument fails because it is based on the assumption that holding a cell phone in plain sight in 2007 is the equivalent of holding a tape recorder in plain sight in 1998.[4] Such an assumption is implausible. As an initial matter, Plaintiff did in fact *secretly* record the officers' oral communications in violation of the Massachusetts Anti-Wiretapping statute. His audio recording of the officers was done without their knowledge.[5] Plaintiff concedes as much in his Complaint when he states that it was not until he confirmed to one of the officers that he was recording audio that he was arrested. Complaint at ¶ 18. Prior to that, the officers were under the belief that Plaintiff was simply taking pictures of them with his cell phone. Complaint at ¶¶ 17-18. Thus, prior to that point in time, Plaintiff had been secretly recording the oral communications of the officers.

The fact that the Plaintiff did not conceal his cell phone does not diminish the reality that the *recording itself* was secret. It would defy logic for the Anti-Wiretapping Statute to prohibit recordings only when the recording device itself is concealed; but not prohibit clandestine recordings as long as the recording device, notwithstanding how inconspicuous the recording capabilities of that device may be, is in "plain view." Cell phones primarily *transmit* oral

---

[4] The defendant in the Hyde case secretly recorded his conversation with police officers with a hand-held tape recorder. Commonwealth v. Hyde, 434 Mass. 594, 608 n.7 (2001) (Marshall, C.J., dissenting). Noteworthy in her dissent is Chief Justice Marshal's recognition that in 1968, when the Massachusetts Legislature amended Mass. Gen. Laws, Ch. 272 § 99, a hand-held tape recorder, like the one used by the defendant, Michael Hyde, was far from being new technology.

[5] The American Heritage Dictionary defines the word "secret" in pertinent part as follows: (1) "Kept hidden from knowledge or view; concealed; (2) Dependably discreet; (3) Operating in a hidden or confidential manner." AMERICAN HERITAGE DICTIONARY 1630 (3d ed. 1992), attached hereto as Exhibit B.

communications, they do not necessarily *record* oral communications.[6]  Likewise, it would be ludicrous to suggest that the officers were aware that their oral communications were being recorded simply because Plaintiff, standing ten feet away and not uttering a single word, held his cell phone towards them while their attention was focused solely on effecting an arrest. Complaint at ¶¶ 14-16.  Plaintiff's own allegations demonstrate that the officers were under the impression that he was taking photographs with his cell phone until he was asked by one of the officers if he was recording audio.  Complaint at ¶¶ 17-18.  Hence, the officers were unaware that their oral communications were being recorded until that moment, which means that prior to that, Plaintiff's recording of the officers arresting the suspect was in fact secret and in violation of the Massachusetts Anti-Wiretapping statute.

Second, it is unlikely that the SJC, when it issued the Hyde decision in 2001, had the foresight that, in the year 2007, cell phones would have the capability of not only taking pictures, but also the capability of making video and audio recordings.  It is unreasonable to argue then, that the SJC had cell phones in mind when it held that the defendant would have been free from prosecution had he simply held his recording device in plain sight.  Thus, Plaintiff's endeavor to fit his actions in this case, into the "plain sight" exception announced in Hyde, is the equivalent of trying to fit a square peg into a round hole.

Under the circumstances as alleged by the Plaintiff in his Complaint, it is clear that officers acted reasonably when they arrested Plaintiff for violating the Massachusetts Anti-

---

[6]   In her emphatic dissent, Chief Justice Marshall specifically referred to "sophisticated inventions [recording devices] of then-recent origin that could be concealed in telephones or walls," as what the Massachusetts Legislature *intended to prohibit* when it enacted the Anti-Wiretapping statute such as the Plaintiff, Simon Glik's, high-tech video/audio recording cell phone; rather than readily-discernable recording devices, such as Michael Hyde's hand-held tape recorder.  Hyde, 434 Mass. at 608 n. 7 (citing INTERIM REPORT OF THE SPECIAL COMMISSION ON ELECTRONIC EAVESDROPPING, 1967 Senate Doc. No. 1198 at 3 (1967 Report)).

Wiretapping statute. Furthermore, in light of the ever-evolving ways in which individuals can record oral communications, the "plain sight" exception does not define the contours of the right in such a manner that would make reasonable officers in the Defendants' position understand that arresting Plaintiff for violating the Massachusetts Anti-Wiretapping statute would impinge on his First Amendment right to record the incident. Even if Plaintiff's actions are determined to fall within the "plain sight" exception, the officers' mistaken belief that their consent was required before their oral communications could be recorded was in fact, a reasonable one and they are entitled to the protections of qualified immunity.

   2. **THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE A REASONABLE OFFICER WOULD HAVE BELIEVED THAT THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF FOR VIOLATING THE MASSACHUSETTS ANTI-WIRETAPPING STATUTE.**

Plaintiff contends that the Defendants lacked probable cause to arrest him for violating the Massachusetts Anti-Wiretapping statute. As discussed supra in Section A(2) of this Memorandum, the Plaintiff indeed has a clearly established right to be free from arrest without probable cause. See U.S. Const. amend. IV; Beck v. Ohio, 379 U.S. 89, 91 (1964). Assuming *arguendo* that the officers did not have probable cause to arrest the Plaintiff, the officers are still entitled to qualified immunity "so long as the presence of probable cause is at least arguable." Ricci v. Urso, 974 F.2d 5, 7 (1st Cir.1992); Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir.1985).

   In this case, it *was* reasonable for the Defendants to believe that they had probable cause to arrest the Plaintiff. The Plaintiff had been recording their oral communications while they were arresting a suspect without their consent or knowledge. Complaint at ¶¶ 13-18. The Plaintiff admits as much when he states that after the suspect had been arrested he was asked by one of the Defendants if he was recording audio. Complaint at ¶ 18. Based on the language of the Massachusetts Anti-Wiretapping statute, and the SJC's decision in Hyde, as discussed supra,

14

it was reasonable for the Defendants to believe that their consent was or knowledge was required for Plaintiff to lawfully record their oral communications. Plaintiff's admission to the officers that his cell phone recorded audio was sufficient to establish the presence of "at least arguable" probable cause. Thus, the Defendants are entitled to qualified immunity for Plaintiff's claim that they violated his Fourth Amendment right to be free from arrest without probable cause.

### 3. MASSACHUSETTS CIVIL RIGHTS ACT:  COUNT II

As outlined above, the Plaintiff cannot succeed on his 42 U.S.C. § 1983 claim, because there was no constitutional violation or, alternatively, because the officers are entitled to qualified immunity. If there is no constitutional violation, the Plaintiff's MCRA claim also cannot stand. See Bell v. Mazza, 394 Mass. 176, 181 (1985) (action under MCRA is coextensive with § 1983 and requires proof of an unlawful act). Likewise, if the officers are entitled to qualified immunity on the Plaintiff's 42 U.S.C. §1983 claim then they are also entitled to qualified immunity on plaintiff's claim under the MCRA. See Foster v. McGrail, 844 F.Supp. 16, 25 (D. Mass. 1994) ("The Massachusetts legislature, in enacting the [Massachusetts] Civil Rights Act, adopted the same standard of immunity for public officials as developed under § 1983 for federal claims.") See also Santiago v. Fenton, 891 F.2d 373, 386 n. 10 (1st Cir.1989) (noting that federal qualified immunity law applies to the Massachusetts Civil Rights Act). Consequently, because the Plaintiff cannot plead a viable 42 U.S.C. § 1983 cause of action, his MCRA claim also fails.

Furthermore, even if the Plaintiff could establish a constitutional violation, he has not alleged facts that meet the MCRA's higher standard of proof – namely, that the interference or attempted interference with the Plaintiff's Constitutional rights was accompanied by threats, intimidation or coercion. Doe v. Senechal, 66 Mass.App.Ct. 68, 78-79 (2006). Beyond taking

the Plaintiff's phone and arresting him, there are simply no allegations in the Complaint that the officers threatened, intimidated, or coerced the Plaintiff. A deprivation of constitutional rights, without accompanying threats, intimidation, or coercion, does not implicate the MCRA. Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 781 (1987). Therefore, the Plaintiff cannot succeed on that claim based on the four corners of his Complaint.

### 4. MALICIOUS PROSECUTION: COUNT III

The Plaintiff's malicious prosecution claim also fails because the officers had probable cause to arrest him. The elements of a common law cause of action for malicious prosecution are: (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceedings in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice. Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing Correllas v. Viveiros, 410 Mass. 314, 318 (1991)); See also Santiago v. Fenton, 891 F.2d 373 (1st Cir. 1989); Foley v. Polaroid Corp., 400 Mass. 82 (1987). Thus, Plaintiff's malicious prosecution claim requires him to prove that his arrest was brought for an improper purpose, without probable cause, and that the legal proceedings were terminated in his favor. Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st Cir. 1999) (citing Landrigan v. City of Warwick, 628 F.2d 736, 745 n. 6 (1st Cir. 1980)). An essential element of Plaintiff's malicious prosecution claim, therefore, is that the Officers lacked probable cause to arrest him. See Wynne v. Rosen, 391 Mass. 797, 802 (1984).

As discussed supra, in Section A(2) of this Memorandum, the officers had probable cause to bring a criminal proceeding against Plaintiff. The probable cause was based on the officers' observations of the Plaintiff holding out a cell phone towards them while they were arresting a suspect, and Plaintiff's admission after the suspect's arrest that he had been recording their oral

16

communications with his cell phone without their permission or knowledge. Moreover, Plaintiff's Complaint lacks any facts or allegations that would suggest that the officers acted with malice against him or arrested him with improper purpose. The facts, as alleged by Plaintiff, demonstrate that the officers simply arrested Plaintiff for violating the Massachusetts Anti-Wiretapping statute and attempting to interfere with their efforts to arrest a suspect. Finally, even if the officers lacked probable cause to arrest the Plaintiff, their mistake was reasonable, and thus they are protected by qualified immunity.

### 5. 42 U.S.C. § 1983: <u>MONELL</u> CLAIM AGAINST THE CITY OF BOSTON

The final count in the Plaintiff's Complaint is a claim of municipal liability against the City. Specifically, the Plaintiff claims that the City failed to train and supervise its police officers on the proper application of M.G.L. c. 272, § 99. This theory of municipal liability also fails.

In order to prove his claim that the City is liable under 42 U.S.C. § 1983, the Plaintiff must show: (1) that he suffered the deprivation of a constitutional right(s); (2) that the officers that caused the harm were acting under color of state law; (3) that the City had an unconstitutional policy, custom or practice; and (4) that the custom, policy or practice was the moving force behind the officers violation of the Plaintiff's constitutional right(s). See Monell v. Department Social Services, 436 U.S. 658, 690 (1978); Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005). Further, a municipality can only be liable under § 1983 for a custom or policy of failing to discipline or supervise its officers if that failure causes a constitutional violation or injury and "amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." DiRico v. City of Quincy, 404 F.3d 464, 468-469 (1st Cir. 2005). If the Plaintiff fails to prove any of those elements, including that he has suffered a

constitutional injury, his 42 U.S.C. § 1983 claim against the City fails.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  As discussed supra in Section A of this Memorandum, the Plaintiff has suffered no constitutional injury.  Consequently, he has not established facts that would enable him to succeed on a claim of municipal liability against the City.

Additionally, the Plaintiff's claim against the City also fails on the grounds that his right to record the officer was not well-settled.  While it is true that qualified immunity is not a defense to a municipal liability claim, where the unsettled state of the law makes it reasonable for police officers to believe that the conduct is constitutional, a municipality cannot be deliberately indifferent to citizens' rights in failing to teach its officers that such conduct was unconstitutional.  See Joyce v. Tewksbury, 112 F.3d 19, 25 (1st Cir. 1997).  See also Szabla v. City of Brooklyn Park, 486 F.3d 385, 393 (8th Cir. 2007); Beard v. Whitmore Lake School Dist., 2007 WL 1748139 (6th Cir. 2007); Townes v. City of New York, 176 F.3d 138, 143-44 (2nd Cir. 1999); Williamson v. City of Virginia Beach, Va., 786 F. Supp. 1238, 1264–65 (E.D. Va. 1992), aff'd, 991 F.2d 793 (4th Cir. 1993).  As discussed supra in Section B of this Memorandum, the Plaintiff had no clearly established right to record the officers.  Thus, the City could not have been deliberately indifferent in failing to train and/or supervise the officers that arresting the Plaintiff under the relevant circumstances was unconstitutional and the Court should dismiss the Plaintiff's claim against the City.

## IV.   CONCLUSION

For the reasons stated above, the Defendants, City of Boston, John Cunniffe, Peter J. Savalis, and Jerome Hall-Brewster respectfully request that all counts against them be dismissed with prejudice.

Respectfully submitted,

**CERTIFICATE OF SERVICE**

DEFENDANTS, CITY OF BOSTON, JOHN CUNNIFFE, PETER J. SAVALIS, AND JEROME HALL-BREWTER

I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

William F. Sinnott,
Corporation Counsel

By their attorneys,

/s/ Lisa A. Skehill

4/22/10   /s/ Lisa A. Skehill__

Date     Lisa A. Skehill

Lisa A. Skehill, BBO # 675344
Ian D. Prior, BBO # 655704
Assistant Corporation Counsel
City of Boston Law Department
1 City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-4022 (Skehill)
(617) 635-4017 (Prior)