| | |
|---|---|
| SIMON GLIK, Plaintiff, | ) ) ) ) Civil Action No. 1:10-cv-10150-WGY ) ) ) ) ) |
| v. | |
| JOHN CUNNIFFE, et al., Defendants. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

This case concerns the fundamental right of citizens to openly record police activity in a public place. On October 1, 2007, Plaintiff Simon Glik witnessed an arrest on Boston Common and openly recorded the incident with his cell phone. Using the excuse that Mr. Glik recorded audio without their permission, Defendant police officers arrested Mr. Glik and charged him with violating the Massachusetts wiretap statute, as well as aiding the escape of a prisoner and breach of the peace. The arrest violated clearly established First and Fourth Amendment principles. Any reasonable police officer would have been aware that there was no probable cause for the arrest because Massachusetts law does not prohibit openly recording sound. Any reasonable police officer would have known that documenting police conduct in public in a nondisruptive manner is expressive activity protected by the First Amendment.

Defendants' motion to dismiss misconstrues the Massachusetts wiretap law and ignores the substantial body of law – including cases from the First Circuit and District of Massachusetts – establishing a First Amendment right to record police conduct. Defendants also ask the Court

to construe the allegations of the Complaint in the light most favorable to them. The Court should deny Defendants' motion in its entirety.

## STATEMENT OF FACTS

The Amended Complaint ("Complaint," "AC") alleges the following facts.

On October 1, 2007, Attorney Simon Glik was walking on Tremont Street from Park Street toward Boylston Street, on the sidewalk next to the Boston Common. AC ¶¶ 4, 9. He saw three Boston police officers he now knows to be Defendants John Cunniffe, Peter J. Savalis, and Jerome Hall-Brewster arresting a young man near a park bench. AC ¶ 10. Mr. Glik heard another young man standing nearby say something like, "You are hurting him, stop." AC ¶ 11. Mr. Glik was concerned that the police officers were using excessive force to make the arrest. AC ¶ 12.

Mr. Glik stopped near the bench and took out his cell phone so that he could document the conduct of the police officers. AC ¶ 13. His phone recorded video with sound. AC ¶¶ 1, 17-18. Mr. Glik stood about ten feet away and recorded the incident. AC ¶ 14. He believes he recorded three short segments. AC ¶ 14. He did not interfere with the officers' actions during the arrest. AC ¶ 16.

After the suspect was in handcuffs, one of the Defendants said to Mr. Glik, "I think you have taken enough pictures." AC ¶ 17. Mr. Glik responded, "I am recording this. I saw you punch him." AC ¶ 17. One of the Defendants then approached Mr. Glik and asked if the phone recorded audio. AC ¶ 18. Mr. Glik said that it did. AC ¶ 18. One of the Defendants handcuffed Mr. Glik. AC ¶ 18. Defendants arrested Mr. Glik and took him into custody. AC ¶ 18.

Plaintiff was charged with violating the wiretap statute, M.G.L. c. 272 § 99; aiding in the escape of a prisoner, M.G.L. c. 268 § 17; and disturbing the peace, M.G.L. c. 272 § 53. AC ¶ 25.

The suspect did not escape from the police officers, nor did Mr. Glik aid in any attempted escape. AC ¶ 20. The Commonwealth voluntarily dismissed the aiding an escape charge for lack of probable cause. AC ¶ 29.

On February 1, 2008, Judge Summerville of the Boston Municipal Court dismissed the remaining charges for lack of probable cause. AC ¶ 30. He dismissed the illegal wiretapping charge because the statute and case law require that the unlawful recording be secret and the police officers admitted Mr. Glik was publicly and openly recording them. AC ¶ 30. The judge dismissed the charge of disturbing the peace because while the "officers were unhappy they were being recorded during an arrest . . . their discomfort does not make a lawful exercise of a First Amendment right a crime." AC ¶ 30.

When Mr. Glik received his cell phone back from the Police Department, some of the video he had recorded of Defendants had been erased. AC ¶ 41. Mr. Glik suffered financial and emotional injuries as a result of Defendants' actions. AC ¶¶ 39-41.

Boston police officers have arrested other people for violation of the state wiretap statute for openly recording audio using cell phones both before and after Plaintiff's arrest. AC ¶ 31. The City of Boston failed to train its officers that only secret audio recordings of a police officer are unlawful under the wiretap statute. AC ¶ 32. Nor did the City of Boston properly supervise police officers to assure that they complied with this statute. AC ¶ 33. The City of Boston did not discipline police officers for making illegal arrests of people for openly recording police conduct. AC ¶ 37. As a result of these failures, it was highly likely that Boston police officers would unconstitutionally arrest people for openly recording police conduct. AC ¶ 32.

**ARGUMENT**

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id. Iqbal* did not change the longstanding rule that courts must still draw every reasonable inference in the plaintiff's favor when considering a motion to dismiss. *See Sutliffe v. Epping Sch. Dist.,* 584 F.3d 314, 325 (1st Cir. 2009). Qualified immunity should not be granted at the motion to dismiss stage where the defense relies on arguments "inconsistent with the factual allegations of the complaint," which must be taken as true. *See Maldonado v. Fontanes,* 568 F.3d 263, 271 (1st Cir. 2009).

Each count of the Complaint easily meets this standard.

## I.    PLAINTIFF STATES A CLAIM FOR FALSE ARREST

An arrest must be supported by probable cause. *Beck v. Ohio,* 379 U.S. 89, 91 (1964). An arrest without probable cause violates the Fourth Amendment protection against unreasonable seizures. *Santiago v. Fenton,* 891 F.2d 373, 388 (1st Cir. 1989). Probable cause exists if "the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the defendant had committed or was committing an offense." *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir. 1992).

In this case, there was no probable cause to believe that Mr. Glik had violated the

Massachusetts wiretap statute, M.G.L. ch. 272 § 99.[1] By its plain terms, the statute prohibits only secret audio recording. The statute makes it a crime to "*secretly* hear [or] *secretly* record ... the contents of any wire or oral communication." M.G.L. ch. 272 § 99(B)(4)(emphasis added). The statute further requires that such secret hearing or recording be done "willfully." *Id.* at (C)(1).

In 2001, the Massachusetts Supreme Judicial Court confirmed that the language of the statute means what it says. *Commonwealth v. Hyde*, 434 Mass. 594 (2001). The court affirmed that the statute prohibited "*secret* electronic recording" and made no exception for surreptitious recording of police officers. *Id.* at 595 (emphasis added). In upholding Michael Hyde's conviction for secretly recording his conversation with the police during a traffic stop, the court stated that "the problem here could have been avoided if ... the defendant had simply informed the police of his intention to tape record the encounter, *or even held the tape recorder in plain sight.*" *Id.* at 605 (emphasis added). As the court explained, "[h]ad he done so, his recording would not have been secret, and so would not have violated G.L. c. 272 § 99." *Id.*

In this case, Simon Glik did exactly what the *Hyde* Court said was permitted: he held his recording device in plain sight. There was nothing secret about the recording. The police officers admitted that the recording was done openly and publicly. AC ¶ 30. Under the circumstances, there was no probable cause to believe that Mr. Glik had "secretly" recorded the officers.

Nor was there probable cause to believe that Mr. Glik had "willfully" committed an interception, another element of the crime. M.G.L. c. 272 § 99(C)(1); *see Commonwealth v. Ennis,* 439 Mass. 64, 68-69 (2003) (offense requires that recording be done secretly and "willfully"). The fact that Mr. Glik was holding the recording device in plain view, on a busy

---

1 Defendants do not argue that there was probable cause to arrest Mr. Glik for any other crime.

public sidewalk – along Boston Common, a quintessentially public place – and that he readily acknowledged that he was recording sound when asked, negate probable cause to believe that he willfully made a secret recording of any of the officers' communications. *See Ennis,* 439 Mass. at 69-70 (party making recording did not act willfully, and thus did not violate the statute, where there was no evidence of intent to conceal the fact that the call was being recorded; "Certainly the department did not 'secretly record' any part of the resulting conversation willfully.").

There is no merit to Defendants' argument that the recording was "secret" because the "audio recording of the officers was done without their knowledge." Defs. Mem. at 12. The officers' claimed subjective knowledge is irrelevant. By holding the recording device in plain view, Mr. Glik did not act secretly (much less willfully so). After *Hyde*, a majority of the justices of the SJC confirmed that whether a recording is secret does not depend on the subjective awareness of the party being recorded. In *Commonwealth v. Rivera,* 445 Mass. 119 (2005), four members of the court, including Justice Greaney, the author of *Hyde*, separately concurred to clarify that a store surveillance camera in plain view of anyone in the store does not violate the statute even though it records sound as well as images. *See id.* at 134 (Cowin, J.) (concurring) ("That the defendant did not know the camera also included an audio component does not convert this otherwise open recording into the type of 'secret' interception prohibited by the Massachusetts wiretap statute."); *id.* at 142 (Cordy, J.) (concurring, joined by Greaney and Ireland, JJ.) ("Just because a robber with a gun may not realize that the surveillance camera pointed directly at him is recording both his image and his voice does not, in my view, make the

recording a 'secret' one within the meaning and intent of the statute.").[2]

Defendants' interpretation of the statute would lead to absurd results. If subjective knowledge were required, then a news crew using a ten-foot boom microphone to record sound at a public event such as a fire would be committing a felony merely because one of the firefighters had his or her back turned to the microphone. Under Defendants' view, unless every firefighter on the scene and all passersby saw the microphone, the news crew would be subject to arrest for illegal wiretapping. Such a sweeping restriction on the right of the media and the public at large violates First Amendment.[3] *See Section II, infra.*

Even assuming, *arguendo*, that the subjective knowledge of the party being recorded was required to avoid violating the statue, this would not provide grounds to grant Defendants' motion to dismiss. The Complaint does *not* concede that the Defendants lacked knowledge that Plaintiff was recording sound, or that Defendants believed that Plaintiff was "simply taking pictures." Defs. Mem. at 12. On the contrary, the fact that one of the officers immediately asked Mr. Glik if his phone recorded audio after learning that Mr. Glik was recording implies that he was well aware that cell phones had this capability. That the officers' question about *audio* was in response to Mr. Glik's statement about what he had *seen* – "I am recording this. I saw you punch him," AC ¶ 17 – strengthens the implication.[4]

Besides being inappropriate on a motion to dismiss, Defendants' allegation that the audio

---

2 The three remaining justices joined only the Court's only main opinion, which disposed of the case on another ground and did not address whether the audio recording was lawful. *Id.* at 123.
3 The general public's right to gather information is coextensive with that of the media. *See, e.g., Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).
4 If as Defendants argue the statute turns on police officers' subjective knowledge of the recording, then police have "a strong incentive to deny knowledge of a recording when an instance of police misconduct occurred." Lisa A. Skehill, *Note: Cloaking Police Misconduct in Privacy: Why the Massachusetts Anti-Wiretapping Statute Should Allow for the Surreptitious Recording of Police Officers*, 43 Suffolk U. L. Rev. 981, 1012 (2009)

recording function of Mr. Glik's cell phone was "clandestine" or not "readily-discernable" is meritless. Defendants acknowledge that "[c]ell phones primarily *transmit* oral communications." Defs. Mem. at 12-13. Openly holding up a machine that transmits oral communications is no different, for purposes of the state wiretap law, than openly holding up a machine that records. The statute prohibits secret "hearing" as well as secret recording. M.G.L. ch. 272 § 99(B)(3)-(4).

At any rate, the Court may take judicial notice that by October 2007, cell phone video and audio recordings were commonplace. *See, e.g., Requa v. Kent Sch. Dist. No. 415,* 492 F.Supp.2d 1272, 1274 (W.D. Wash. 2007) (noting with regard to audiovisual footage of unknown origin taken in 2006 that "[g]iven the state of technology, the images could have been captured on a small, handheld video recorder or even a cell phone").[5] Well before October 2007, audiovisual recordings made from cell phones had gained international attention and helped to document significant world and national events.[6] In January 2007, an unauthorized cell phone recording of Saddam Hussein's execution, which contained both sound and video, generated international controversy.[7] In November 2006, the FBI investigated the Los Angeles police after a cell phone recording capturing the police punching a suspect in the face as he cried "Let go of me! I can't breathe! I can't breathe!" was posted on YouTube.[8] Given the ubiquity of cell phones with video

---

5 *See also, e.g., Torres v. McDonald,* 2009 U.S. Dist. LEXIS 109610, at *75 (E.D. Cal. Nov. 24, 2009) (describing 2005 investigation in which "[p]olice were able to obtain information from Lawrence's cell phone which consisted of photographs, sound bites, and videos of Lawrence hanging out with other [gang] members").

6 *See, e.g.,* David Bauder, "Cell-Phone Videos Transforming TV News," Washington Post, Jan. 7, 2007 (available at http://www.washingtonpost.com/wp-dyn/content/article/2007/01/07/AR2007010700473.html); Katie Couric, "Smile, You're on the Phone," Couric & Co. blog on cbsnews.com, Feb. 22, 2007 (available at www.cbsnews.com/8301-500803_162-2506240-500803.html). All web addresses cited herein were last visited on May 14, 2010.

7 See John Burns and James Glanz, "Iraq to Review Hussein's Execution," *New York Times,* Jan. 3, 2007 (available at www.nytimes.com/2007/01/03/world/middleeast/03iraq.html?_r=1).

8 Sonya Geis and Hamil R. Harris, "Beating of L.A. Suspect Sparks Outcry," *Washington Post,* Nov. 11, 2006 (available at /www.washingtonpost.com/wp-dyn/content/article/2006/11/10/AR2006111001666.html); "Police beating video from L.A. demonstrates the power of YouTube again," *USA Today,* Nov. 10, 2006 (available at http://www.usatoday.com/news/nation/2006-11-10-lapd-arrest_x.htm).

and sound recording capabilities in 2007, there is no serious argument that the audio recording device in such phones was "concealed." Defs. Mem. at 12.[9]

Because Mr. Glik's audio recording was not secret, there was no probable cause to arrest him for illegal wiretapping. The Complaint thus states a claim for false arrest.

## II.  PLAINTIFF STATES A FIRST AMENDMENT CLAIM

The Complaint states a claim that Defendants violated Mr. Glik's First Amendment rights. By arresting him, Defendants stopped Mr. Glik from being able to make an audiovisual recording of police conduct while he stood in the Boston Common and openly recorded their use of force. The arrest was a direct interference with Mr. Glik's right to observe and document the conduct of law enforcement officers carrying out their duties in a public place.

Plaintiff "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). The right to record police activity stems from a long line of cases holding "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Id.* (collecting cases). That this right, like all First Amendment rights, is subject to reasonable restrictions does not mean there is no constitutional right in specific circumstances.

Numerous courts, including the First Circuit and the District of Massachusetts, have recognized the right to record matters of public interest. *See, e.g., Iacobucci v. Boulter*, 193 F.3d 14, 25 & n. 6 (1st Cir. 1999) (filming a conversation in a public area of a public building "was

---

[9] At a minimum, Defendants' assertion of ignorance raises many factual questions, inappropriate for resolution at this stage, concerning their knowledge of and experience with cell phones as well as what a reasonable police officer in 2007 would have understood about cell phones' recording capabilities.

done in the exercise of [Plaintiff's] First Amendment rights"); *Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir. 1995); (recognizing "First Amendment right to film matters of public interest"); *Demarest v. Athol/Orange Cmty. Television Inc.*, 188 F. Supp. 2d 82, 94 (D.Mass. 2002) ("At base, plaintiffs had a constitutionally protected right to record matters of public interest."); *Alliance to End Repression v. City of Chicago,* 2000 U.S. Dist. LEXIS 6342, at *63 (N.D. Ill. May 8, 2000) (right to take photographs of police is protected by the First Amendment); *Connell v. Hudson,* 733 F. Supp. 465, 470-471 (D.N.H. 1990) ("According to principles of jurisprudence long respected in this nation, Chief Brackett could not lawfully interfere with Nick Connell's picture-taking activities unless Connell unreasonably interfered with police and emergency functions."); *Lambert v. Polk County*, 723 F.Supp. 128, 133 (S.D. Iowa 1989) ("It is not just news organizations... who have First Amendment rights to make and display videotapes of events – all of us ... have that right."); *Channel 10, Inc. v. Gunnarson*, 337 F.Supp. 634, 638 (D.Minn. 1972) (recognizing "constitutional right to have access to and to make use of the public streets, roads and highways ... for the purpose of observing and recording in writing and photographically the events which occur therein").

As *Iacobucci, Demarest, Smith, Fordyce,* and *Lambert* demonstrate, videotape is no different from still cameras for First Amendment purposes. In *Robinson v. Fetterman*, 378 F. Supp. 2d 534 (E.D. Penn. 2005), the plaintiff sued after being arrested for videotaping state troopers' actions in public. Robinson stood on property where he had a right to be and he did not interfere with the troopers' work. *Id.* at 539. The court held that

> [v]ideotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence ... In sum, there can be no doubt that the free speech clause of the Constitution protected Robinson as he videotaped the defendants ....

*Id.* at 541.

Nothing in the above opinions recognizing a broad right to record matters of public interest suggests that this right includes only pictures, not sound. The First Amendment right does not change with the addition of audio to video recording. Silent movies have been gone for decades. Sound recording has long been a standard feature of video cameras, and was a feature of the video cameras in cases cited above. *See, e.g., Iacobucci,* 193 F.3d at 18, 24; *Demarest,* 188 F. Supp. 2d at 86; *Fordyce,* 55 F.3d at 439.

The cases cited by Defendants do not stand for the proposition that no constitutional right exists to document police conduct in public. Defs. Mem. at 5. Neither *Gouin v. Gouin,* 249 F. Supp. 62, 79 (D. Mass. 2003), nor *Jean v. Mass. State Police,* 492 F.3d 24, 33 (2007), addressed whether there is a First Amendment right to photograph or videotape police conduct, and nothing in either case suggests that there is not. Nor does *Hyde* address whether there is a First Amendment right to openly record police activity.

The fact that courts do not recognize an unfettered right to record the police is uncontested and irrelevant. All First Amendment rights are "fettered." As the cases described above demonstrate, there is a First Amendment right to record the police carrying out their duties in public places where the person recording is not interfering with the police, is allowed to be in the public place, and is making the recording openly – the very facts of this case.

## III.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

In evaluating an assertion of qualified immunity on a motion to dismiss, the Court considers "(1) whether plaintiff's allegations, taken as true, establish the violation of a

constitutional right, and (2) whether the constitutional right was clearly established at the time of the challenged conduct." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 52 (1st Cir. 2009).[10] Under the second prong, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.* In the First Circuit, the inquiry on whether an officer had fair warning "encompasses not only Supreme Court precedent, but all available case law," *Suboh v. Dist. Attorney's Office,* 298 F.3d 81, 93 (1st Cir. 2002), including district court and appellate court opinions from elsewhere in the country. *See Hatch v. Dep't for Children,* 274 F.3d 12, 24 (1st Cir. 2001).

As discussed in Sections I and II, *supra,* Plaintiff has alleged violations of his First and Fourth Amendment rights. Because Defendants had fair notice that they were violating these rights when they arrested Plaintiff for recording them on October 1, 2007, they are not entitled to qualified immunity.

### A.    Qualified immunity is not warranted for Mr. Glik's false arrest claim

No reasonable officer could have believed, under the circumstances alleged in the Complaint, that probable cause existed to arrest Mr. Glik for illegal wiretapping.[11] It was clearly established by 2007 that holding a recording device in plain view did not violate the

---

10 Although *Pearson v. Callahan*, 129 S.Ct. 808 (2009) makes optional the requirement, under *Saucier v. Katz*, 533 U.S. 194 (2001), that the court first determine if the facts alleged establish a constitutional violation, in this case the sequential approach is warranted for several reasons. First, the defendants have moved to dismiss for failure to state a cognizable claim. Second, the public interest is best served by deciding the questions at issue here, where the public increasingly documents police conduct in public places by means of cell phones that record audio as well as video and the right to do so is fundamental to a free society. As the *Pearson* majority noted, deciding whether a constitutional violation has been pleaded serves to promote "the development of constitutional precedent" and "is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Id.* at 821; *see also Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004) ("[P]roper development of the law of qualified immunity is advanced if courts treat these []questions sequentially.").
11 Defendants do not argue, nor do the allegations permit a finding, that there was probable cause to arrest Plaintiff for the other crimes he was charged with or for any other crimes.

Massachusetts wiretapping statute.

Mr. Glik had a clearly established right to be free from arrest without probable cause. *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir. 1992). To ensure that this right is not violated, reasonable police officers must know the law. *See Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir. 1987). This includes criminal statutes as well as decisional law interpreting those statutes. *See, e.g., Sheehy v. Town of Plymouth,* 191 F.3d 15, 22 (1st Cir. 1999) (examining disorderly person statute as interpreted by Massachusetts courts to determine whether arrest was reasonable).

In *Iacobucci,* the First Circuit held that a reasonable police officer would have been aware of the caselaw regarding disorderly conduct as well as the statutory language of the state's open meeting law. *Iacobucci,* 193 F.3d at 24-25. The Court denied qualified immunity because in light of these authorities, Plaintiff's "constitutional right to act as he did without being arrested for disorderly conduct was sufficiently clear that a reasonable official would [have understood] that what he [was] doing violate[d] that right." *Id.* at 24.

Here, a reasonable police officer would have understood that the state wiretap statute prohibited only the secret recording of communications and that the SJC in *Hyde* had stated that holding a recording device in plain view negated secrecy. A reasonable police officer would have understood that arresting Mr. Glik for openly recording an arrest on Boston Common was unlawful.[12] The opinion of the Boston Municipal Court in Mr. Glik's case, which easily

---

12 Nor could a police officer have reasonably believed, as Defendants suggest, that the statute required consent irrespective of their knowledge of the recording. Defs. Mem. at 14. The language of the wiretap statute plainly requires "prior authority" of the parties being recorded only when the person listening or recording does so "secretly." M.G.L. ch. 272 § 99 (B)(4). As *Hyde* makes clear, knowledge, irrespective of consent, negates the element of secrecy. Further, any belief that consent was required for open recording in public would be unreasonable in light of the clearly established First Amendment right to engage in such recording. See cases cited in Section II, *supra,* especially the 2002 *Demarest* case, which struck down a requirement that public cable access television producers obtain signed consent forms before airing voice or image recordings of any person, regardless of the

concluded that there was no probable cause to believe Mr. Glik had made a secret recording

under the wiretap statute, further supports the conclusion that the law was clearly established at

the time of Mr. Glik's arrest. *See Commonwealth v. Glik,* No. 0701 CR 6687 (Boston Mun. Ct.

Jan. 31, 2008) (attached hereto as Ex. 1).

### B.    Qualified immunity is not warranted for Mr. Glik's First Amendment claim

#### 1.    The right to openly record police activity in public was clearly established

As discussed above, the facts of the Complaint establish a violation of First Amendment

rights. These rights were clearly established at the time of Mr. Glik's arrest, as shown by the

extensive case law from across the country, including from the First Circuit and the District of

Massachusetts. These cases provided ample notice to police officers that audiovisual recording of

their conduct in public places, done openly and in a manner that does not interfere with police

activity, is protected by the First Amendment.

Defendants rely on three district court cases, two from Pennsylvania, to argue that the

right to record police officers carrying out their official duties was not clearly established. Defs.

Mem. at 9-10. None of these cases supports such a finding here.

Both *Kelly v. Borough of Carlisle,* 2009 U.S. Dist. LEXIS 37618 (M.D. Pa. May 4,

2009), currently on appeal to the Third Circuit, and *Matheny v. County of Allegheny,* 2010 U.S.

Dist. LEXIS 24189 (W.D. Pa. Mar. 16, 2010), relied primarily on the lack of direct Supreme

Court and Third Circuit authority in concluding that there was no clearly established First

Amendment right to record the police. Though both courts cited limited authority outside the

---

circumstances. 188 F. Supp. 2d at 94. The court found the restriction violated the First Amendment by placing "a
suffocatingly impracticable burden on electronic news gathering" including recordings on city streets. *Id.*

Third Circuit, they failed to consider virtually any of the substantial body of caselaw cited by Plaintiff in this case. See Section II, *supra*. This caselaw includes decisions of the First Circuit and the District of Massachusetts.

Further, the *Matheny* court made an arbitrary and unwarranted distinction between audio and video. The court acknowledged that cases had found a right to videotape but stated that this right had not been recognized as extending to audio, relying on a sole 1989 decision. *Matheny*, 2010 U.S. Dist. LEXIS 24189, at *15 (citing *Jones v. Gaydula*, 1989 U.S. Dist. LEXIS 15419 (E.D. Pa. Dec. 22, 1989)). *Jones* gave no explanation or supporting authority for its one-sentence declaration that there is "no First Amendment right to tape record statements of an unwilling utterant." *Jones*, 1989 U.S. Dist. LEXIS 15419, at *6. This statement is at odds with the later rulings in *Iacobucci*; *Fordyce*; and *Demarest*.

The third case relied on by Defendants, *Gravolet v. Tassin*, 2009 U.S. Dist. LEXIS 45876 (E.D. La. June 2, 2009), is factually different from this case. The plaintiff had been arrested for stalking after repeatedly following a female police officer and videotaping her at a traffic stop. In granting qualified immunity for an arrest without probable cause, the court held that there was a reasonable basis to arrest the plaintiff under the stalking statute. The use of a video camera did not immunize the plaintiff from a stalking charge. Moreover, the court concluded only that there was no "clearly established right to videotape police officers … '*under these circumstances*'." *Id.* at *13. (emphasis added).

In this case, no reasonable officer could have believed that a person standing along the Common and holding up a cell phone lacked a First Amendment right to transmit or record the sights and sounds obvious to all present.

15

## IV.    PLAINTIFF STATES A CLAIM UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT

To prevail under the Massachusetts Civil Rights Act, M.G.L. ch. 12, §§ 11H and 11I, a plaintiff must show that "(1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation, or coercion." *Davis v. Rennie,* 264 F.3d 86, 111 (1st Cir. 2001).

The Complaint alleges that Defendants interfered with Plaintiff's First Amendment right to record and display video of police officers making an arrest in public. Assuming the Court finds Plaintiff has stated a First Amendment claim, this satisfies the first and second prongs of the MCRA inquiry. The Complaint alleges that Defendants interfered with Plaintiff's First Amendment rights by the "intrinsically coercive" and intimidating act of arresting him. *Sarvis v. Boston Safe Dep. & Trust Co.,* 47 Mass. App. Ct. 86, 92-93 (Mass. App. Ct. 1999). This satisfies the third prong. *See id.*; *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 823 (1985); *Reprod. Rights Network v. President of the Univ. of Mass.,* 45 Mass. App. Ct. 495, 508 (1998).

## V.    PLAINTIFF STATES A CLAIM FOR MALICIOUS PROSECUTION

Under Massachusetts law, malicious prosecution requires "1) that the defendant initiated a criminal action against him; 2) that the criminal prosecution ended in [the plaintiff's] favor; 3) that there was no probable cause to initiate the criminal charge; and 4) that the defendant acted maliciously." *Santiago v. Fenton,* 891 F.2d 373, 387 (1st. Cir. 1989).

Defendants do not dispute that they initiated a criminal action against Mr. Glik or that it terminated in his favor. The issues are whether there was probable cause and whether Defendants acted maliciously.

There was no probable cause for any of the charges. As discussed in Section I, *supra*, there was no probable cause to charge Plaintiff with violating the wiretapping statute. As to aiding the escape of a prisoner, the Complaint alleges that the suspect did not escape from the police, that Mr. Glik did not help him try to escape, and that Mr. Glik stood at a distance and did not interfere with the officers' actions. AC ¶¶ 20, 16. The Commonwealth dismissed this charge for lack of probable cause. AC ¶ 29. As to disturbing the peace, the Complaint alleges that Mr. Glik did not breach the peace, AC ¶ 21, and that the Boston Municipal Court dismissed this charge for lack of probable cause. Nothing in the Complaint supports Defendants' contention that "the facts, as alleged by Plaintiff" show that he "attempt[ed] to interfere with their efforts to arrest a suspect," Defs. Mem. at 17, or that any officer could have reasonably believed that Plaintiff acted in a disorderly manner or aided in an escape.

The element of malice may be inferred from the lack of probable cause. *See, e.g., Chervin v. Travelers Ins. Co.,* 448 Mass. 95, 109 (Mass. 2006). Malice exists when police officers make an arrest to cover up an officer's misconduct. *Santiago*, 891 F.2d at 388.

The Complaint alleges that Defendants initiated a baseless criminal prosecution against Mr. Glik to punish him for exercising his First Amendment rights and to deter him and others from doing so again. The Complaint also alleges that the officers arrested Mr. Glik after he said he saw them punch a suspect, words that could be construed as implying a belief that the officers

had committed misconduct. These allegations are more than sufficient to survive a Rule 12(b)(6) motion. *See Gouin*, 249 F. Supp. 2d at 72 (malice is a question of fact).

## VI.   PLAINTIFF STATES A *MONELL* CLAIM AGAINST THE CITY OF BOSTON

In *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities could be sued under Section 1983 if a "policy or custom" of the municipality caused a constitutional deprivation. *Id.* at 694. The municipal policy or custom must be the "moving force" behind the constitutional deprivation. *City of Canton Ohio v. Harris*, 489 U.S. 378, 385 (1989).

The qualified immunity defense does not apply to municipalities. *Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980). Even if this Court were to find the individual police officer Defendants are protected by qualified immunity, the court must still analyze the City's liability.[13] When the Supreme Court abandoned the requirement in *Saucier* that a court must first decide if a constitutional right was violated when analyzing qualified immunity in §1983 damages cases, the Court did so in part because it was confident this would not impede development of the law. *Pearson* found that the constitutional issues could be presented in "criminal cases and § 1983 cases against a municipality" as well as in injunctive cases. *Pearson v. Callahan*, 129 S. Ct. 808, 821-22 (2009). If municipalities could not be liable when the law is

---

13 In *Joyce v. Town of Tewksbury*, 112 F.3d 19, 23 (1st Cir. 1997), the First Circuit recognized that a City may be liable for a civil rights violation even though the individual defendants are entitled to qualified immunity. *Joyce* does not stand for the proposition that a municipal failure to train claim must fail whenever an individual officer may have held a mistaken but reasonable view of the law. Joyce involved a truly novel Fourth Amendment issue. The failure to train allegation in this case concerns an interpretation of a state criminal statute by the state's highest court. The City's failure to provide *any* guidance to its officers as to how to apply a statute they regularly enforced suggests a deliberate indifference to whether they were enforcing it correctly. *See, e.g., Lischner v. Upper Darby Twp.*, 2007 U.S. Dist. LEXIS 7913, at *49 (E.D. Pa. Feb. 5, 2007) (allowing claim against township to proceed where failure to train officers on defiant trespass statute could have amounted to deliberate indifference in the face of likely constitutional violations, despite granting officer qualified immunity for mistaken application of statute).

not "clearly established," the development of constitutional law would be stymied.

In *City of Canton,* the Court held that a policy of failing to properly train police officers will support § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 389. The Court held a city may be liable for failing to train police officers if the failure is "so likely to result in the violation of constitutional rights" that the policymakers of the city are deliberately indifferent to the need. As an illustration of the standard the court said if a city armed police officers but did not train those police officers on the constitutional limits on the use of deadly force the need would be so obvious that failure to train would be deliberately indifferent. *Id.* at 390 n.10. This is similar to the claim alleged here.

A failure to train claim does not require a pattern of constitutional violations when that result is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* at 390; *Swain v. Spinney,* 117 F.3d 1, 11 (1st Cir. 1997). A complete failure to train which causes a constitutional deprivation can support a municipal liability claim. *See Young v. City of Providence*, 404 F.3d. 4, 28 (1st Cir. 2005) (failure to train on possible misidentification of off-duty officers responding to an incident, especially minority officers, may go to the jury even without evidence of prior incidents).

Simon Glik alleges the City failed to train its officers that only *secret* audio recordings of a police officer are unlawful under the wiretap statute and as a result of this failure, it was highly likely that Boston police officers would unconstitutionally arrest people for openly recording police conduct. Police officers should be knowledgeable of the elements of criminal laws generally; it is particularly important that police officer understand the right of a police officer to

arrest a person for a crime against the police officer. If the City did not train or instruct its police officers that the statute permitting them to arrest a person for recording their voice is limited, it was highly likely that police officers would arrest people for openly recording them in the course of their work just as they have regularly arrested people for secret recording.[14] Unlawfully arresting a person for openly recording police conduct deprives the person of his liberty, a serious harm. These arrests also foster a lack of trust in the community because it looks like the police officers fear public knowledge of the officers' public conduct.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

RESPECTFULLY SUBMITTED,
For the Plaintiff,
By his attorneys,

/s/ David Milton
David Milton, BBO #668908
**Law Offices of Howard Friedman PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
dmilton@civil-rights-law.com

/s/ Sarah Wunsch
Sarah Wunsch, BBO # 548767
**American Civil Liberties Union of Massachusetts**
211 Congress Street, 3rd floor
Boston, MA 02110
(617) 482-3170, ext. 323
swunsch@aclum.org

Dated: May 14, 2010

---

14 Arrests for secretly recording police officers are common in states that prohibit secret recording. *See* Skehill, *supra* note 4, at 986 n.40.

**Certificate of Service**

I certify that on this day a true copy of the above
document was served upon the attorney of record
for each party via ECF.

Date: May 14, 2010          /s/ David Milton_____
                            David Milton