UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIMON GLIK,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>JOHN CUNNIFFE, PETER J. SAVALIS and JEROME HALL-BREWSTER, in their individual capacities, and the CITY OF BOSTON,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 1:10-cv-10150-LTS |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff seeks an order compelling production of the complete file of the Boston Police Department Internal Affairs Division investigation of his own citizen complaint about the conduct at issue in this lawsuit. The City of Boston has asserted a blanket objection to producing anything in the file on the grounds that the investigation of the complaint – lodged more than three years ago – is still ongoing. The City unreasonably claims that everything in the file – including Plaintiff's own email complaint, Plaintiff's interview with IAD, and interviews with Defendants and another witness – is subject to the "investigatory privilege." The materials sought are not privileged, and even if they were, the City has no legitimate interest in withholding the materials that outweighs Plaintiff's strong need for them. The unreasonableness of the City's position is underscored by the fact that in 2008, before this lawsuit was filed, the Boston Police Department was willing to provide what it represented was the entire file pursuant to a public records request. The BPD did not claim in April 2008 that the investigation was ongoing or that any part of the file was subject to any exception to the public records law.

## BACKGROUND

This is a civil rights case against three Boston police officers and the City of Boston. On October 1, 2007, Plaintiff Simon Glik witnessed an arrest on Boston Common and openly recorded the incident with his cell phone. Though Plaintiff's actions were lawful and constitutionally protected, Defendant police officers arrested Mr. Glik and charged him with, *inter alia*, violating the Massachusetts wiretap statute. The criminal court dismissed the case, ruling that openly recording police officers does not violate the wiretap statute and is protected by the First Amendment.[1] The complaint asserts First and Fourth Amendment claims against the officers and the City.

The complaint alleges that the City had a policy or custom of permitting its police officers to make unlawful arrests under the wiretap statute. The complaint alleges that, among other things, the City did not discipline police officers for making illegal arrests of people for openly recording police conduct.[2] The complaint alleges that even after the criminal court found that the officers had violated Mr. Glik's rights, the City did not investigate Mr. Glik's civilian complaint or discipline the officers.[3]

Mr. Glik filed a civilian complaint with the BPD on November 1, 2007. Shortly after his criminal case was dismissed on February 1, 2008, Mr. Glik was interviewed by two sergeants at Internal Affairs Division ("IAD"). On April 9, 2008, Mr. Glik filed a public records request seeking the contents of the IAD file.[4] The Police Department provided what it represented was the entire paper file at that time, and indicated that it would provide an audio copy of Mr. Glik's

---

[1] *See* Amended Complaint ("AC") ¶ 30 [Docket Entry No. 6].
[2] AC ¶ 37.
[3] AC ¶ 35.
[4] Declaration of David Milton ("Milton Decl."), Ex. 1 (correspondence related to Mr. Glik's records request) at 1.

interview upon payment of $10.[5] Mr. Glik did not pay the money then and did not receive the

tape. The Police Department did not claim in April 2008 that the investigation was ongoing or

that any part of the file was subject to any exception to the public records law.

Plaintiff filed this lawsuit on February 1, 2010. All Defendants moved to dismiss. On

June 8, 2010, Judge Young denied the motions in their entirety. All Defendants filed an

interlocutory appeal. Discovery against the individual Defendants is stayed pending the appeal.

The First Circuit denied the City's motion to stay discovery against the City.[6]

Plaintiff served document requests on the City on August 2, 2010. After receiving two

extensions of time, the City served responses and objections on October 14, 2010. Regarding the

request for all materials related to Plaintiff's IAD complaint, the City objected to this request

because it purportedly sought information pertaining solely to Plaintiff's claim against the

individual police officers, on which discovery had been stayed, and because "the internal affairs

investigation is ongoing and once it is concluded, the City will supplement this response

accordingly."[7]

Plaintiff's counsel disagreed with these and other objections and called defense counsel to

confer. On October 26, 2010, counsel had a long telephone conference, and several follow up

conversations and e-mails, during which we worked out a detailed compromise that resolved

most of our disagreements. As part of the compromise, Plaintiff's counsel agreed to return to the

City a document it had produced and to file a motion, which the City would not oppose, to

---

[5] *Id. at 2, 8.*
[6] The individual Defendants' brief on appeal, filed December 9, 2010, indicates that the City has abandoned its appeal.
[7] Milton Decl., Ex. 2 at 2-3 (Defendant City of Boston's Response to Request for Production No. 5).

compel production of the same document.[8]

For its part, the City agreed to withdraw its objections to a number of Plaintiff's requests, including Request No. 5, concerning the IAD file. Plaintiff's counsel sent defense counsel a detailed letter on October 26, 2010, memorializing our agreements that day. Regarding the IAD file, the City agreed to the following:

> The City withdraws its objection to producing documents from Plaintiff's internal affairs complaint on the ground that the investigation is ongoing. By November 5, 2010, the City will identify all responsive documents and either produce them or provide a privilege log identifying with particularity any materials being withheld and the privilege or other basis for withholding.[9]

Contrary to this agreement, the City served a belated supplemental response on November 10 that reasserted, under the rubric of the "investigatory privilege," the blanket objection to producing anything in the file.[10] The City failed to provide a privilege log or even to identify what materials it was withholding. Plaintiff's counsel wrote to counsel for the City on November 30, 2010, to state that the City's supplemental response violated the parties' agreement. After further correspondence on this issue on December 2 and 3, 2010, Plaintiff's counsel agreed to give defense counsel additional time to serve a privilege log before filing a motion to compel.

On December 7, 2010, Defendant served a privilege log, which claims that every single item in the file is subject to the so-called investigatory privilege.[11] Defendant claims that this privilege applies to Plaintiff's initial email complaint to IAD, Plaintiff's interview with IAD, the individual Defendants' interviews with IAD, a nonparty witness's interview with IAD, an index

---

[8] This Court allowed this motion on November 23, 2010.
[9] Milton Decl., Ex. 3 (Letter from David Milton to Ian Prior, 10/26/10) at 1-2.
[10] Milton Decl., Ex. 4 at 3.
[11] Milton Decl., Ex. 5.

of the file, and an internal email forwarding Plaintiff's complaint the same day it was filed.

The request for production at issue is the following:

5.    All materials related to Plaintiff's internal affairs complaint, including but not limited to:

      a.    Recordings and any transcripts from interviews conducted with involved officers, the Plaintiff, and any other witnesses;

      b.    All investigative reports or summaries;

      c.    All documents gathered or created during the investigation, including any notes taken by any investigator or other officer;

      d.    All documents related to the disposition of the investigation;

      e.    All other written or electronic communications regarding the incident, investigation, or disposition of Plaintiff's complaint.

### Defendant's Response, served 10/14/10:

The City objects to Request No. 5 on the grounds that it seeks information that solely concerns the Plaintiff's claims against the individual police officers, which is currently on appeal and is subject to the First Circuit Court of Appeals Order staying discovery pending the resolution of the appeal of those individual officers.

Without waiving the foregoing objection, the City states that the internal affairs investigation is ongoing and once it has concluded, the City will supplement this response accordingly.[12]

### Defendant's First Supplemental Response, served 11/10/10:

The City objects on the grounds that Request No. 5 calls for information and documents that are subject to the City's investigatory privilege. Specifically, the City states that the IAD investigation is ongoing and turning over the requested information to the Plaintiff prior to the completion of the investigation, including his own interview, would compromise the City's ability to properly carry out its law enforcement function.[13]

### DISCUSSION

## I.    THERE IS NO BASIS FOR WITHHOLDING THE IAD FILE

### A.    The materials are relevant.

The materials sought are indisputably relevant. The files contain statements of Plaintiff,

each of the three Defendants, and a key witness, Lino Cook, the individual whose arrest Plaintiff was videotaping, about the incident at issue in this lawsuit. In addition, it is significant that the interviews of the officers and Mr. Cook took place only after this lawsuit was filed, more than two years after Plaintiff filed his complaint. The complaint alleges that the City turns a blind eye to misconduct by its officers generally and to abuses of the wiretap statute in particular. The City's failure to take prompt or appropriate action against the officers in this case, even after a judge found they violated the law, would be strong evidence in support of this claim. *See Bordanaro v. McCloud*, 871 F.2d 1151, 1160 (1st Cir. 1989) (finding that city's inadequate response to incident at issue was evidence of a policy of failing to train, supervise or discipline its police force). The questions the interviewers asked of the officers and other witnesses are also relevant, as they will reflect the concerns of the Department and whether it is interested in investigating misconduct by its officers, or glossing over it.

**B.      The materials are not privileged.**

Though Defendant invokes the "investigatory privilege," this is not the name of any generally recognized privilege. Plaintiff assumes that Defendant intends to invoke the "law enforcement investigatory privilege," *see, e.g. Browning v. City of S. Bend*, 2010 U.S. Dist. LEXIS 103743, at *4 (N.D. Ind. Sept. 30, 2010), also called the law enforcement privilege, *see Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007). This is a qualified privilege designed to protect "confidential government surveillance information" and "sensitive law enforcement techniques," *Puerto Rico*, 490 F.3d at 64; *see also Kitevski v. City of New York*, 2006 U.S. Dist. LEXIS 11017, at *7 (S.D.N.Y. Mar. 16, 2006) (purpose of privilege is "to

---

[12] Milton Decl., Ex. 2 at 2-3.
[13] Milton Decl., Ex. 4 at 3.

prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation"). The privilege is qualified, meaning that it "is subject to balancing the ... government's interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure." *Puerto Rico,* 490 F.3d at 64; *see also Kitevski,* 2006 U.S. Dist. LEXIS 11017, at *7.

The mere fact that requested materials relate to an ongoing investigation is insufficient to establish the privilege, much less to shield the entire investigatory file from disclosure. Courts routinely order production of files from ongoing civilian complaint investigations. *See, e.g. Santiago v. City of Chicago,* 2010 U.S. Dist. LEXIS 29198 (N.D. Ill. Mar. 26, 2010) ("[I]t is not enough for Defendants to assert that the documents must be protected solely because they relate to an ongoing investigation. There is simply no support in the law for this position.")(citation omitted); *Kitevski,* 2006 U.S. Dist. LEXIS 11017, at **7-8 ("The City and the IRD take the position that if they claim an 'investigation' is ongoing, no information need be disclosed. The invocation of the privilege requires more."); *Barrett v. City of New York,* 237 F.R.D. 39, 42 (E.D.N.Y. 2006) (ordering production where "defendants broadly assert that disclosure of any unresolved CCRB complaints will impede any ongoing investigations of these complaints" but "fail to specifically identify any potential harm" from disclosure); *see also Jouvalakas v. Minnehan,* 2004 U.S. Dist. Lexis 11120, at *2 (D. Mass. June 18, 2004) ("[N]o blanket investigatory privilege exists to protect Internal Affairs investigations; and on the record in this case, nothing suggests any particular harm to the investigation by disclosure, if, indeed, it is still

ongoing.").

Counsel's conclusory, unsubstantiated assertion that disclosure "would compromise the City's ability to properly carry out its law enforcement function" is also insufficient to establish the privilege. Rather, the City must "'make a substantial threshold showing[] that there are specific harms likely to accrue' from the disclosure of the requested materials in order to establish that they are entitled to invoke the law enforcement privilege." *Conte v. County of Nassau,* 2009 U.S. Dist. LEXIS 41348, at *20 (E.D.N.Y. May 15, 2009) (citations omitted); *accord, e.g., Browning,* 2010 U.S. Dist. LEXIS 103743, at *9 ("The government has not provided an explanation for why each request is privileged, what harm would result, or how great the harm would be. Absent greater specificity, the defendants failed to meet their burden and the internal affairs files are not subject to the law enforcement investigatory privilege."); *Torres v. Kuzniasz,* 936 F. Supp. 1201, 1210 (D.N.J. 1996) ("A claim of executive or law enforcement privilege must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted 'precise and certain reasons for preserving' the confidentiality of the communications."). Courts have consistently rejected boilerplate assertions that police department investigations would be hampered by disclosing investigatory materials. *See, e.g., Williams v. City of Boston,* 213 F.R.D. 99, 102 (D. Mass. 2003) (noting courts' "skepticism that disclosure of internal investigative reports would compromise or chill investigations"); *Conte,* 2009 U.S. Dist. LEXIS 41348, at *24; *Browning,* 2010 U.S. Dist. LEXIS 103743, at **9-10; *Torres,* 936 F. Supp. at 1215.

## C.    The balance of interests favors disclosure.

Because Defendant will be unable to meet its burden of establishing that the materials are

privileged in the first instance, the Court need not balance the City's interest in preserving their confidentiality against Plaintiff's interest in disclosure. *See Browning,* 2010 U.S. Dist. LEXIS 103743, at *4; *Kitevski,* 2006 U.S. Dist. LEXIS 11017, at *8. The materials are relevant under Rule 26(b)(1) and must produced.

Regardless, Plaintiff's need for the materials outweighs any legitimate interest the City has in withholding them. "In federal civil rights cases, an assertion of privilege must overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Williams,* 213 F.R.D. at 102 (citation omitted). The materials in the file consist almost entirely of statements by the parties, and a key nonparty witness, concerning the very incident at issue in this lawsuit. These factual materials bear directly on the contested circumstances of Plaintiff's arrest. Further, the conduct of the investigation itself is important to Plaintiff's claim that the City failed to properly investigate allegations of misconduct against police officers generally and concerning abuses of the wiretap statute in particular. *Cf. Williams,* 213 F.R.D. at 102 (where the "decision-making process itself is the subject of the litigation," it is inappropriate to withhold relevant information about this process) (citation omitted).

Any claimed harm by the City is undermined by the fact that before this lawsuit was filed, the Police Department was willing to disclose, pursuant to a public records request, the entire contents of the file as it existed in 2008. This includes materials – including Plaintiff's interview with IAD – that the City now claims it will be harmed by disclosing.[14]

Finally, any supposed harm to the ongoing investigation could be resolved with a

---

[14] As mentioned, the BPD provided Mr. Glik with what it represented was the entire paper file, Milton Decl., Ex. 1 at 2, 8, which included a document containing the text of Mr. Glik's November 1, 2007 email complaint to IAD, *id.* at 3. On information and belief, this document (which Plaintiff produced to the City in discovery) contains the same email message that the City claims is privileged. Milton Decl., Ex. 5 at 2.

carefully crafted protective order limiting disclosure of the materials. *See, e.g., Santiago,* 2010 U.S. Dist. LEXIS 29198, at *11. Plaintiff does not propose such an order in the first instance, since shielding police department investigations from public scrutiny "offends basic notions of openness and public confidence in our system of justice," *Williams,* 213 F.R.D. at 102; *accord King,* 180 F.R.D. at 190 ("Lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must be considered with that concern in mind."). Any protective order limiting disclosure should be confined to whatever materials, if any, truly warrant such treatment.

## II.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to compel and order production of the entire IAD file concerning this incident.

RESPECTFULLY SUBMITTED,

For the Plaintiff,
By his attorneys,

/s/ David Milton
Howard Friedman, BBO #180080
David Milton, BBO # 668908
**Law Offices of Howard Friedman PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com

/s/ Sarah Wunsch_____
Sarah Wunsch, BBO # 548767
**American Civil Liberties Union of
Massachusetts**
211 Congress Street, 3rd floor
Boston, MA 02110
(617) 482-3170, ext. 323
swunsch@aclum.org

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above
document was served upon the attorney of record
for each party via ECF.

Date: December 10, 2010  /s/ David Milton
                         David Milton

11