# United States Court of Appeals
## For the First Circuit

No. 10-1764

SIMON GLIK,

Plaintiff, Appellee,

v.

JOHN CUNNIFFE, in his individual capacity; PETER J. SAVALIS, in
his individual capacity; JEROME HALL-BREWSTER, in his individual
capacity; CITY OF BOSTON,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]

Before
Torruella, Lipez, and Howard,
Circuit Judges.

Ian D. Prior, Assistant Corporation Counsel, City of Boston
Law Department, with whom William F. Sinnott, Corporation Counsel,
and Lisa Skehill Maki, Assistant Corporation Counsel, were on
brief, for appellants.
David Milton, with whom Howard Friedman, Law Offices of Howard
Friedman, P.C., Sarah Wunsch, and ACLU of Massachusetts were on
brief, for appellee.
Anjana Samant and Center for Constitutional Rights on brief
for Berkeley Copwatch, Communities United Against Police Brutality,
Justice Committee, Milwaukee Police Accountability Coalition,
Nodutdol for Korean Community Development, and Portland Copwatch,
amici curiae.

August 26, 2011

**LIPEZ**, **Circuit Judge**.  Simon Glik was arrested for using his cell phone's digital video camera to film several police officers arresting a young man on the Boston Common.  The charges against Glik, which included violation of Massachusetts's wiretap statute and two other state-law offenses, were subsequently judged baseless and were dismissed.  Glik then brought this suit under 42 U.S.C. § 1983, claiming that his arrest for filming the officers constituted a violation of his rights under the First and Fourth Amendments.

In this interlocutory appeal, the defendant police officers challenge an order of the district court denying them qualified immunity on Glik's constitutional claims.  We conclude, based on the facts alleged, that Glik was exercising clearly-established First Amendment rights in filming the officers in a public space, and that his clearly-established Fourth Amendment rights were violated by his arrest without probable cause.  We therefore affirm.

**I.**

We recite the pertinent facts based upon the allegations of the complaint, Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 6 (1st Cir. 2007), "accepting all well-pleaded facts in the complaint as true," Sanchez v. Pereira-Castillo, 590 F.3d 31, 36, 52 n.15 (1st Cir. 2009).

As he was walking past the Boston Common on the evening of October 1, 2007, Simon Glik caught sight of three police officers -- the individual defendants here -- arresting a young man. Glik heard another bystander say something to the effect of, "You are hurting him, stop." Concerned that the officers were employing excessive force to effect the arrest, Glik stopped roughly ten feet away and began recording video footage of the arrest on his cell phone.

After placing the suspect in handcuffs, one of the officers turned to Glik and said, "I think you have taken enough pictures." Glik replied, "I am recording this. I saw you punch him." An officer[1] then approached Glik and asked if Glik's cell phone recorded audio. When Glik affirmed that he was recording audio, the officer placed him in handcuffs, arresting him for, inter alia, unlawful audio recording in violation of Massachusetts's wiretap statute. Glik was taken to the South Boston police station. In the course of booking, the police confiscated Glik's cell phone and a computer flash drive and held them as evidence.

Glik was eventually charged with violation of the wiretap statute, Mass. Gen. Laws ch. 272, § 99(C)(1), disturbing the peace, id. ch. 272, § 53(b), and aiding in the escape of a prisoner, id.

---

[1] It is not clear from the complaint whether this was the same officer who initially addressed Glik.

ch. 268, § 17.  Acknowledging lack of probable cause for the last
of these charges, the Commonwealth voluntarily dismissed the count
of aiding in the escape of a prisoner.  In February 2008, in
response to Glik's motion to dismiss, the Boston Municipal Court
disposed of the remaining two charges for disturbance of the peace
and violation of the wiretap statute.  With regard to the former,
the court noted that the fact that the "officers were unhappy they
were being recorded during an arrest . . . does not make a lawful
exercise of a First Amendment right a crime."  Likewise, the court
found no probable cause supporting the wiretap charge, because the
law requires a secret recording and the officers admitted that Glik
had used his cell phone openly and in plain view to obtain the
video and audio recording.

Glik filed an internal affairs complaint with the Boston
Police Department following his arrest, but to no avail.  The
Department did not investigate his complaint or initiate
disciplinary action against the arresting officers.  In February
2010, Glik filed a civil rights action against the officers and the
City of Boston in the United States District Court for the District
of Massachusetts.  The complaint included claims under 42 U.S.C. §
1983 for violations of Glik's First and Fourth Amendment rights, as
well as state-law claims under the Massachusetts Civil Rights Act,
Mass. Gen. Laws ch. 12, § 11I, and for malicious prosecution.

The defendants moved to dismiss Glik's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the allegations of the complaint failed to adequately support Glik's claims and that the officers were entitled to qualified immunity "because it is not well-settled that he had a constitutional right to record the officers."  At a hearing on the motion, the district court focused on the qualified immunity defense, noting that it presented the closest issue.  After hearing argument from the parties, the court orally denied the defendants' motion, concluding that "in the First Circuit . . . this First Amendment right publicly to record the activities of police officers on public business is established."

This timely appeal followed.  Denial of a motion to dismiss on qualified immunity grounds, unlike denial of a typical motion to dismiss, is immediately appealable on interlocutory review.  Garnier v. Rodríguez, 506 F.3d 22, 25 (1st Cir. 2007); cf. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam) (stressing "the importance of resolving immunity questions at the earliest possible stage in litigation").  We limit our review to the issue of qualified immunity, Garnier, 506 F.3d at 25, which is a legal determination that we review de novo, Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010).

-5-

## II.

Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions. See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982); Barton v. Clancy, 632 F.3d 9, 21 (1st Cir. 2011).  The qualified immunity doctrine "balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). We apply a two-prong analysis in determining questions of qualified immunity.  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  These prongs, which may be resolved in any order, Pearson, 555 U.S. at 236, require that we decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation," Maldonado, 568 F.3d at 269.

The latter analysis of whether a right was "clearly established" further divides into two parts: "(1) 'the clarity of the law at the time of the alleged civil rights violation,' and (2) whether, given the facts of the particular case, 'a reasonable defendant would have understood that his conduct violated the

plaintiff['s] constitutional rights.'"   <u>Barton</u>, 632 F.3d at 22 (alteration in original) (quoting <u>Maldonado</u>, 568 F.3d at 269).   An affirmative finding on these inquiries does "not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." <u>Ashcroft</u> v. <u>al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011).   At bottom, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." <u>Maldonado</u>, 568 F.3d at 269.

On appeal, appellants[2] argue that they are entitled to qualified immunity on each of Glik's constitutional claims and, accordingly, that the district erred in denying their motion to dismiss.[3]   Their arguments track the two parts of the "clearly

---

[2] Although the City of Boston is formally included in the caption to this appeal, the parties agree that the City has no right to immediate interlocutory appeal from a denial of qualified immunity, as it did not -- and could not -- assert such a defense. <u>See</u> <u>Walden</u> v. <u>City of Providence</u>, 596 F.3d 38, 55 n.23 (1st Cir. 2010).   In referring to the appellants, then, we refer only to the individual defendants appealing the denial of qualified immunity.

[3] Appellants also argue that Glik failed to state a claim for malicious prosecution under Massachusetts law because, they argue, there was probable cause to charge Glik with a violation of the wiretap statute.   As Glik rightly points out, however, appellants have no immediate right of appeal from denial of a motion to dismiss for failure to state a claim, and thus we do not reach their argument.   <u>See</u> <u>Domegan</u> v. <u>Fair</u>, 859 F.2d 1059, 1061-62 (1st Cir. 1988) ("Notwithstanding that we have jurisdiction to review the denial of qualified immunity midstream, '[a]ny additional claim presented to and rejected by the district court must independently satisfy the collateral-order exception to the final-judgment rule in order for us to address it on an interlocutory appeal.'" (alteration in original) (quoting <u>Bonitz</u> v. <u>Fair</u>, 804 F.2d 164, 173

established right" analysis.  With regard to the First Amendment
claim, appellants dispute the clarity of the law establishing a
First Amendment right to record police officers carrying out their
public duties.  On the Fourth Amendment claim, appellants contend
that, in light of Massachusetts case law interpreting the state's
wiretap statute, a reasonable officer would have believed there was
probable cause to arrest Glik, and thus would not have understood
that the arrest would violate the Fourth Amendment.  We examine
each argument in turn.

**A.   Immunity from Glik's First Amendment Claim**

      **1.   Were Glik's First Amendment Rights Violated?**

The First Amendment issue here is, as the parties frame
it, fairly narrow: is there a constitutionally protected right to
videotape police carrying out their duties in public?  Basic First
Amendment principles, along with case law from this and other
circuits, answer that question unambiguously in the affirmative.

It is firmly established that the First Amendment's
aegis extends further than the text's proscription on laws
"abridging the freedom of speech, or of the press," and encompasses
a range of conduct related to the gathering and dissemination of
information.  As the Supreme Court has observed, "the First
Amendment goes beyond protection of the press and the
self-expression of individuals to prohibit government from limiting

---

(1st Cir. 1986))).

the stock of information from which members of the public may draw." First Nat'l Bank v. Bellotti, 435 U.S. 765, 783 (1978); see also Stanley v. Georgia, 394 U.S. 557, 564 (1969) ("It is . . . well established that the Constitution protects the right to receive information and ideas."). An important corollary to this interest in protecting the stock of public information is that "[t]here is an undoubted right to gather news 'from any source by means within the law.'" Houchins v. KQED, Inc., 438 U.S. 1, 11 (1978) (quoting Branzburg v. Hayes, 408 U.S. 665, 681-82 (1972)).

The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within these principles. Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting "the free discussion of governmental affairs." Mills v. Alabama, 384 U.S. 214, 218 (1966). Moreover, as the Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.'" First Nat'l Bank, 435 U.S. at 777 n.11 (alteration in original) (quoting Thomas Emerson, Toward a General Theory of the First Amendment 9 (1966)). This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to

-9-

deprive individuals of their liberties. Cf. Gentile v. State Bar of Nev., 501 U.S. 1030, 1035-36 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors). Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, see id. at 1034-35 (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"), but also may have a salutary effect on the functioning of government more generally, see Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8 (1986) (noting that "many governmental processes operate best under public scrutiny").

In line with these principles, we have previously recognized that the videotaping of public officials is an exercise of First Amendment liberties. In Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999), a local journalist brought a § 1983 claim arising from his arrest in the course of filming officials in the hallway outside a public meeting of a historic district commission. The commissioners had objected to the plaintiff's filming. Id. at 18. When the plaintiff refused to desist, a police officer on the scene arrested him for disorderly conduct. Id. The charges were later dismissed. Id. Although the plaintiff's subsequent § 1983 suit against the arresting police officer was grounded largely in the Fourth Amendment and did not include a First Amendment claim, we

explicitly noted, in rejecting the officer's appeal from a denial of qualified immunity, that because the plaintiff's journalistic activities "were peaceful, not performed in derogation of any law, and <u>done in the exercise of his First Amendment rights</u>, [the officer] lacked the authority to stop them." <u>Id.</u> at 25 (emphasis added).

Our recognition that the First Amendment protects the filming of government officials in public spaces accords with the decisions of numerous circuit and district courts. <u>See</u>, <u>e.g.</u>, <u>Smith</u> v. <u>City of Cumming</u>, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); <u>Fordyce</u> v. <u>City of Seattle</u>, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a "First Amendment right to film matters of public interest"); <u>Demarest</u> v. <u>Athol/Orange Cmty. Television, Inc.</u>, 188 F. Supp. 2d 82, 94-95 (D. Mass. 2002) (finding it "highly probable" that filming of a public official on street outside his home by contributors to public access cable show was protected by the First Amendment, and noting that, "[a]t base, plaintiffs had a constitutionally protected right to record matters of public interest"); <u>Channel 10, Inc.</u> v. <u>Gunnarson</u>, 337 F. Supp. 634, 638 (D. Minn. 1972) (holding that police interference with television newsman's filming of crime scene and seizure of video camera

constituted unlawful prior restraint under First Amendment); cf. Schnell v. City of Chi., 407 F.2d 1084, 1085 (7th Cir. 1969) (reversing dismissal for failure to state a claim of suit claiming police interference with news reporters and photographers' "constitutional right to gather and report news, and to photograph news events" under the First Amendment (internal quotation mark omitted)), overruled on other grounds by City of Kenosha v. Bruno, 412 U.S. 507 (1973); Connell v. Town of Hudson, 733 F. Supp. 465, 471-72 (D.N.H. 1990) (denying qualified immunity from First Amendment claim to police chief who prevented freelance photographer from taking pictures of car accident).

It is of no significance that the present case, unlike Iacobucci and many of those cited above, involves a private individual, and not a reporter, gathering information about public officials.  The First Amendment right to gather news is, as the Court has often noted, not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of the press.  Houchins, 438 U.S. at 16 (Stewart, J., concurring) (noting that the Constitution "assure[s] the public and the press equal access once government has opened its doors"); Branzburg, 408 U.S. at 684 ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."). Indeed, there are several cases involving private individuals among

the decisions from other courts recognizing the First Amendment right to film.   See, e.g., Smith, 212 F.3d 1332; Robinson v. Fetterman, 378 F. Supp. 2d 534 (E.D. Pa. 2005) (holding that arrest of individual filming police activities from private property violated First Amendment); Cirelli v. Town of Johnston Sch. Dist., 897 F. Supp. 663 (D.R.I. 1995) (holding that teacher had a right under the First Amendment to videotape potentially hazardous working conditions at school, which were a matter of public concern).  Moreover, changes in technology and society have made the lines between private citizen and journalist exceedingly difficult to draw.  The proliferation of electronic devices with video-recording capability means that many of our images of current events come from bystanders with a ready cell phone or digital camera rather than a traditional film crew, and news stories are now just as likely to be broken by a blogger at her computer as a reporter at a major newspaper.  Such developments make clear why the news-gathering protections of the First Amendment cannot turn on professional credentials or status.

To be sure, the right to film is not without limitations. It may be subject to reasonable time, place, and manner restrictions. See Smith, 212 F.3d at 1333.  We have no occasion to explore those limitations here, however.  On the facts alleged in the complaint, Glik's exercise of his First Amendment rights fell well within the bounds of the Constitution's protections.  Glik

-13-

filmed the defendant police officers in the Boston Common, the oldest city park in the United States and the apotheosis of a public forum.  In such traditional public spaces, the rights of the state to limit the exercise of First Amendment activity are "sharply circumscribed."   Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).   Moreover, as in Iacobucci, the complaint indicates that Glik "filmed [the officers] from a comfortable remove" and "neither spoke to nor molested them in any way" (except in directly responding to the officers when they addressed him).  193 F.3d at 25.  Such peaceful recording of an arrest in a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation.

In our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights.  See City of Houston v. Hill, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").  Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  Id. at 462-63.  The same restraint demanded of law enforcement officers in the face of "provocative and challenging" speech, id. at 461 (quoting Terminiello v. Chicago,

-14-

337 U.S. 1, 4 (1949)), must be expected when they are merely the subject of videotaping that memorializes, without impairing, their work in public spaces.

### 2.  Was the Right to Film Clearly Established?

Though the "clearly established" inquiry does "not require a case directly on point," al-Kidd, 131 S. Ct. at 2083, we have such a case in Iacobucci.  What is particularly notable about Iacobucci is the brevity of the First Amendment discussion, a characteristic found in other circuit opinions that have recognized a right to film government officials or matters of public interest in public space.  See Smith, 212 F.3d at 1333; Fordyce, 55 F.3d at 439.  This terseness implicitly speaks to the fundamental and virtually self-evident nature of the First Amendment's protections in this area.  Cf. Lee v. Gregory, 363 F.3d 931, 936 (9th Cir. 2004) (noting that some constitutional violations are "self-evident" and do not require particularized case law to substantiate them).  We thus have no trouble concluding that "the state of the law at the time of the alleged violation gave the defendant[s] fair warning that [their] particular conduct was unconstitutional." Maldonado, 568 F.3d at 269.

We find unavailing the two cases principally relied upon by the appellants in arguing that the First Amendment right to film was not clearly established at the time of the arrest, both of which were decided after Glik's arrest.  The first is an

-15-

unpublished per curiam opinion from the Fourth Circuit that summarily concludes, with no discussion of the facts or relevant law, that the "right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct." Szymecki v. Houck, 353 F. App'x 852 (4th Cir. 2009).  Such unpublished opinions "have no precedential force," Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co.), 420 F.3d 53, 60 (1st Cir. 2005); see also United States v. King, 628 F.3d 693, 700 n.3 (4th Cir. 2011) (same), and the absence of substantive discussion deprives Szymecki of any marginal persuasive value it might otherwise have had.

The second case appellants cite is a Third Circuit opinion finding the right to film not clearly established in the context of a traffic stop, characterized as an "inherently dangerous situation[]." Kelly v. Borough of Carlisle, 622 F.3d 248, 262 (3d Cir. 2010). Kelly is clearly distinguishable on its facts; a traffic stop is worlds apart from an arrest on the Boston Common in the circumstances alleged.  Nonetheless, even if these cases were to establish a circuit split with respect to the clarity of the First Amendment's protections in the situation before us, that split would not undermine our conclusion that the right violated by appellants was clearly established in this circuit at the time of Glik's arrest. See Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir. 1989) (finding constitutional right clearly

established in the First Circuit despite "recogni[tion] that the courts are not yet unanimous on whether this . . . right exists").

In summary, though not unqualified, a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment. Accordingly, we hold that the district court did not err in denying qualified immunity to the appellants on Glik's First Amendment claim.

**B.   Immunity from Glik's Fourth Amendment Claim**

     **1.   Were Glik's Fourth Amendment Rights Violated?**

The existence of a Fourth Amendment violation on the facts alleged here turns on a question of Massachusetts law.  The Fourth Amendment requires that an arrest be grounded in probable cause, Martínez-Rodríguez v. Guevara, 597 F.3d 414, 420 (1st Cir. 2010), i.e., that, "at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . [were] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect [had] committed, [was] committing, or [was] about to commit an offense,'" Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). The thrust of Glik's Fourth Amendment claim is that the appellants lacked any such probable cause that Glik had violated state law at

-17-

the time of arrest.  The appellants argue, to the contrary, that the allegations of the complaint establish probable cause that Glik violated Massachusetts's wiretap statute.[4]  Upon examination of the statute and relevant case law from Massachusetts's Supreme Judicial Court, we disagree.

Massachusetts's wiretap statute makes it a crime to "willfully commit[] an interception . . . of any wire or oral communication."  Mass. Gen. Laws ch. 272, § 99(C)(1).  As the Supreme Judicial Court has noted, this statute sweeps more broadly than comparable laws in other jurisdictions, in that its prohibition is not restricted to the recording of communications that are made with a reasonable expectation of privacy.  See Commonwealth v. Hyde, 750 N.E.2d 963, 967-68 & n.5 (Mass. 2001).[5]  The critical limiting term in the statute is "interception," defined to mean "to secretly hear, secretly record, or aid another

---

[4] Appellants do not attempt any argument that the facts make out probable cause for the other two offenses with which Glik was charged, disturbing the peace and aiding in the escape of a prisoner.

[5] In Hyde, the defendant argued that the wiretap statute did not apply to his taping of police officers, as those "police officers did not possess any privacy interest in the words they spoke" in their interactions with the defendant.  750 N.E.2d at 965.  The court rejected the argument, noting that the statute requires no reasonable expectation of privacy, and held that the prohibition of secret recordings squarely applies to "recordings of police officers or other public officials interacting with members of the public."  Id. at 967.  Thus, in the present case, the fact that the subjects of Glik's recording were police officers is immaterial to the question of the wiretap statute's applicability.

to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." Id. § 99(B)(4).

The relevant question, then, is whether, on the facts alleged in the complaint, Glik "secretly" videotaped the appellant officers.[6]  The Supreme Judicial Court has held that a recording is "secret" unless the subject has "actual knowledge" of the fact of recording. Commonwealth v. Jackson, 349 N.E.2d 337, 340 (Mass. 1976). It has also made clear that "actual knowledge" can be proven by "objective manifestations of knowledge" to "avoid the problems involved in speculating as to the [subject's] subjective state of mind." Id. at 340-41. Moreover, the court has noted that "actual knowledge" does not require that there be any explicit

---

[6] Glik also points to the statute's language requiring that an offender "willfully commit[] an interception," Mass. Gen. Laws ch. 272, § 99(C)(1) (emphasis added), and argues that there was no probable cause for his arrest because his recording was not "willful." In this vein, he notes that he was holding his camera in plain view and readily acknowledged that he was recording sound when asked. However, the relevant precedent suggests that the statute's reference to willfulness requires only a specific intent to record a particular communication, rather than requiring an intent to hide the recording from the subject or some other "willful" state of mind. See Commonwealth v. Ennis, 785 N.E.2d 677, 681 (Mass. 2003) (noting that the Department of Correction "did willfully record" a telephone call, under circumstances where the Department expressly advised the participants that their conversation would be recorded). The allegations of the complaint leave no doubt that Glik intended to record appellants' conduct of the arrest, and thus we see no merit in Glik's argument on this point.

acknowledgment of or reference to the fact of the recording.  Id.
at 340 ("[T]he person recording the conversation [need not] confirm
the [subject's] apparent awareness by acknowledging the fact of the
intercepting device.").  Thus, in Hyde, where the defendant was
convicted of a wiretap violation for secretly recording a traffic
stop, the Supreme Judicial Court explained that "the recording
would not have been secret" within the meaning of the statute if
the defendant had simply "held the tape recorder in plain sight."
750 N.E.2d at 971.  The unmistakable logic of Hyde, building on
Jackson, is that the secrecy inquiry turns on notice, i.e.,
whether, based on objective indicators, such as the presence of a
recording device in plain view, one can infer that the subject was
aware that she might be recorded.

Commonwealth v. Rivera, 833 N.E.2d 1113 (Mass. 2005),
forcefully illustrates this point.  There, a criminal defendant
argued for suppression under the wiretap statute of an audio
recording by a convenience store security camera, on the theory
that he lacked actual knowledge that the security cameras recorded
audio as well as video.  Although the case was resolved on other
grounds, four of the seven justices of the Supreme Judicial Court
concurred to note that the defendant's unawareness of the audio
recording capabilities of the security cameras did not render the
recordings "secret" under the wiretap statute where the cameras
were in plain sight.  Id. at 1125 (Cowin, J., concurring in part)

-20-

("That the defendant did not know the camera also included an audio component does not convert this otherwise open recording into the type of 'secret' interception prohibited by the Massachusetts wiretap statute."); id. at 1130 (Cordy, J., concurring) ("Just because a robber with a gun may not realize that the surveillance camera pointed directly at him is recording both his image and his voice does not . . . make the recording a 'secret' one within the meaning and intent of the statute.").

The complaint alleges that Glik "openly record[ed] the police officers" with his cell phone, and further that "the police officers admitted Mr. Glik was publicly and openly recording them." On its face, this conduct falls plainly outside the type of clandestine recording targeted by the wiretap statute. See Jackson, 349 N.E.2d at 339 ("While we recognize that [the wiretap statute] is designed to control the use of electronic surveillance devices by private individuals because of the serious threat they pose to 'the privacy of all citizens,' (§ 99A), it is clear that the Legislature intended that the statutory restrictions be applicable only to the secret use of such devices." (emphasis added)). Moreover, not only does Hyde (along with the Rivera concurrences) indicate that the use of a recording device in "plain sight," as here, constitutes adequate objective evidence of actual knowledge of the recording, but here the police officers made clear through their conduct that they knew Glik was recording them.

-21-

Specifically, one of the police officers approached Glik after the suspect had been handcuffed and told him, "I think you have taken enough pictures."

The officers protest that Glik's use of a cell phone was insufficient to put them on notice of the recording.  They note that a cell phone, unlike the tape recorder used in Hyde, has numerous discrete functions, such as text messaging, internet browsing, video gaming, and photography, and thus the fact of an individual holding out a cell phone in front of his body is of indeterminate significance.  The argument suffers from factual as well as legal flaws.  The allegations of the complaint indicate that the officers were cognizant of Glik's surveillance, knew that Glik was using his phone to record them in some fashion, and were aware, based on their asking Glik whether he was recording audio, that cell phones may have sound recording capabilities.  The fact that a cell phone may have other functions is thus irrelevant to the question of whether Glik's recording was "secret."

Appellants' argument reduces to the contention that, though they were aware of Glik's recording, they initially thought Glik was taking pictures of them rather than recording video and audio.  This is almost precisely the argument rejected by the four concurring justices in Rivera, and it runs directly contrary to the logic of Hyde's "plain view" discussion.  Taking the appellants' argument to its logical end, the Hyde defendant's recording would

-22-

have escaped a wiretap offense only if he had held his tape recorder in plain view <u>and</u> there was affirmative evidence that the officers were aware that the device was switched on and recording audio.  To the contrary, <u>Hyde</u> makes the point that the use in plain view of a device commonly known to record audio is, on its own, sufficient evidence from which to infer the subjects' actual knowledge of the recording.  <u>See</u> 750 N.E.2d at 971 (noting that recording would not have been secret under the statute if "the defendant had simply informed the police of his intention to tape record the encounter, <u>or</u> even held the tape recorder in plain sight" (emphasis added)).  Simply put, a straightforward reading of the statute and case law cannot support the suggestion that a recording made with a device known to record audio and held in plain view is "secret."

We thus conclude, on the facts of the complaint, that Glik's recording was not "secret" within the meaning of Massachusetts's wiretap statute, and therefore the officers lacked probable cause to arrest him.  Accordingly, the complaint makes out a violation of Glik's Fourth Amendment rights.

**2.  Was the Absence of Probable Cause Clearly Established Under the Circumstances?**

Appellants contend that, regardless of whether Glik's conduct in fact violated the wiretap law, the state of the law was such that a reasonable officer would not have understood that arresting Glik for a wiretap offense under the circumstances

alleged in the complaint would violate Glik's Fourth Amendment
rights. They point out, rightly, that a lesser showing is required
for an officer to be entitled to qualified immunity from a Fourth
Amendment claim based on a warrantless arrest than to establish
probable cause. See Cox v. Hainey, 391 F.3d 25, 31 (1st Cir.
2004). Officers are entitled to qualified immunity "so long as the
presence of probable cause is at least arguable." Ricci v. Urso,
974 F.2d 5, 7 (1st Cir. 1992) (quoting Prokey v. Watkins, 942 F.2d
67, 72 (1st Cir. 1991)).

The presence of probable cause was not even arguable
here. The allegations of the complaint establish that Glik was
openly recording the police officers and that they were aware of
his surveillance. For the reasons we have discussed, we see no
basis in the law for a reasonable officer to conclude that such a
conspicuous act of recording was "secret" merely because the
officer did not have actual knowledge of whether audio was being
recorded. We thus agree with the district court that, at this
stage in the litigation, the officers are not entitled to qualified
immunity from Glik's Fourth Amendment claim.

**III.**

For the reasons set forth above, we affirm the district
court's order denying appellants' claim of qualified immunity.

So ordered.